UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

------------------------------x
Nextel Communications of the Mid-Atlantic, Inc. :
d/b/a Nextel Communications

:

Plaintiff,

:

vs.                                              **CIVIL ACTION NO.**
                                              :  **03-12563-DPW**

The Town of Hanson, Massachusetts and the
Massachusetts State Board of Building Regulations :
and Standards

:

Defendants

:

Mr. and Mrs. Stephen DeFrancesco, Marston Realty
Trust and Hirschfeld Communications LLC,        :

Proposed Intervenors :
------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Nextel Communications of the Mid-Atlantic, Inc. d/b/a Nextel Communications ("Nextel") respectfully submits the following Memorandum of Law in Support of its Motion for Summary Judgment herein.

### STATEMENT OF FACTS[1]

Nextel is licensed by the federal government to provide commercial mobile radio services, a type of personal wireless services ("PWS") as that term is defined in 47 U.S.C. § 332(c)(7)(C)(i), in various areas including the Town of Hanson, Massachusetts (the "Town").

On or about July 19, 2000, Nextel commenced an action in this Court, Case No. 00-CV-11417-DPW (the "Prior Litigation"), alleging that the Town's refusal to allow Nextel to replace

---

[1] See Nextel's Statement of Undisputed Fact, submitted herewith.

an existing radio tower with a new tower capable of supporting Nextel's antennas (both the tower and the antennas are within the definition of "personal wireless service facilities" contained in 47 U.S.C. § 332 (c)(7)(C)(ii)) violated various provisions of Section 704 of the Telecommunications Act of 1996, 47 U.S.C. § 332 (c)(7)(B) (the "TCA").

After Nextel filed a motion for summary judgment in the Prior Litigation, the Town agreed to settle the matter by allowing Nextel to build the proposed tower and a consent decree memorializing the settlement terms was entered in this Court on April 19, 2001 (the "Consent Decree"). Conditions were imposed requiring Nextel to provide evidence of the structural integrity of the new tower, but the Town did not otherwise reserve any right to require changes to the placement or construction of the tower as shown as plans which Nextel had previously submitted. Consent Decree at paras. 2, 3.

The entry and implementation of the Consent Decree was (and remains) fully consistent with the national policy embodied in the TCA, which favors the development of seamless and ubiquitous PWS networks and which also favors negotiated resolution of disputes involving the siting of the PWS facilities. See Brehmer v. Town of Wellfleet, 238 F.3d 117, 121 (1st Cir. 2001); Town of Amherst v. Omnipoint Communications, 173 F.3d 9, 16-17 (1st Cir. 1999); Patterson v. Omnipoint, 122 F.Supp. 222, 228 (D.Mass. 2000).

When Nextel attempted to implement the Consent Decree by building the replacement tower this past winter, its efforts were thwarted by the Town. At first, the Town demanded that Nextel submit its proposal to site plan review. The Town eventually relented from this demand but then, through its building inspector, took the position that the replacement tower was a roof-mounted "antennal structure" within the meaning of the State Building Code; that as an "antennal structure," it was subject to a set-back requirement contained in the Code; that the

proposed "antennal structure" did not meet this setback requirement; and, that therefore no building permit could be issued.

The language of the Code relied upon by the Town is found in 780 CMR § 3109.1, a subsection which is entitled "[Building] Permits not Required" and is limited in scope to roof installation of antennal structures "not more than 12 feet . . . in height for private radio and television reception."

Nextel is not seeking to mount an "antenna" or an "antennal structure" on a roof for private purposes, but rather to construct a commercial "Radio . . . Tower" which is a structure governed by 780 CMR § 3108, and not 780 CMR § 3109.1. As the plans incorporated by reference into the Consent Decree indicate, Nextel's antennas are separate devices which will be installed on the tower once it is built. See, e.g., Plans at Sheet A-1.

Nextel concluded that the Town was going out of its way to thwart the April 2001 settlement which it had agreed to and which this Court approved. Accordingly, on or about April 18, 2003, Nextel moved to enforce the consent judgment.

On June 19, 2003, this Court issued a procedural order in response to Nextel's motion to enforce the consent judgment (and other pending matters). The order, among other things, directed the Building Inspector of the Town of Hanson to "forthwith make and issue a redetermination" of the earlier ruling by which he decided that Nextel would not be allowed to construct its replacement tower. The order also contemplated that Nextel would then appeal such redetermination to the State Board so that the Board could rule on the interpretation of the Code provisions at issue.

Two and a half weeks later (July 8, 2003), the building inspector issued the re-determination, and on or about July 17, 2003, Nextel filed a timely appeal from the

redetermination with the State Board. Pursuant to Massachusetts statute (Mass.Gen.L. ch. 143, sec. 100) the State Board was required to hold a hearing within thirty (30) days of Nextel's filing (i.e., by August 17, 2003) and then to issue a written decision within thirty (30) days thereafter.

The State Board scheduled a hearing on Nextel's appeal on September 11, 2003 (nearly a month beyond the statutory requirement). Then, after holding the hearing before a three-member panel, the State Board took the matter under advisement. Despite the statutory requirement that a decision be issued within thirty (30) days of the hearing, the Board did not take any further action on Nextel's appeal.

On October 29, 2003, Nextel filed a Second Motion to Enforce Consent Judgment (the "Second Motion") seeking a Court Order directing the Town to issue the building permit sought by Nextel without further delay. As of the time the Second Motion was filed, the State Board's written decision was nearly three weeks overdue.

On November 3, 2003, the Court denied Nextel's Second Motion to Enforce Consent Judgment without prejudice to renew provided the State Board was joined as a party to the Prior Litigation.

Nextel accordingly moved to join the State Board as a defendant in the Prior Litigation and on December 1, 2003, the Court issued an order to show cause which required the State Board to explain why Nextel's Second Motion to Enforce Consent Judgment should not be enforced.

Nextel caused the Order to Show Cause to be personally served on December 2 upon the State Board and the Town, as well as upon counsel for Mr. and Mrs. DeFrancesco, Marston Realty Trust and Hirschfeld Communications, who earlier had sought to intervene in the Prior Litigation.

On December 3, 2003, in response to the Order to Show Cause, the State Board issued its written decision, which upheld the interpretation of the Building Code made by the Hanson building inspector ("the Decision.") The Decision reflects that the Board had held deliberations on November 6, 2003 but did not issue any written decision at that time. The Decision also reflects that the chair of the three-member panel of the Board which had heard Nextel's appeal felt that the language of the Building Code is "somewhat ambiguous." Another member of the panel felt that the proposed tower "resembled a tower rather than an antenna." Despite this, all three members of the panel voted to deny Nextel's appeal.

At the hearing held on the Order to Show Cause on December 10, 2003, the Court issued rulings to the effect that the State Board's decision amounts to a final action reviewable under the "substantial evidence" standard pursuant to 47 U.S.C. § 332 (c)(7)(B)(iii) and that Nextel should bring a separate action pursuant to that statute to obtain this Court's review of the State Board's decision. Nextel now brings this action to obtain such review, but notes that it has not yet obtained copies of the audio tapes of the proceedings before the State Board (formally requested on December 4, 2003) or an identification from the State Board of additional exhibits which were or may have been considered by the State Board, and thus respectfully reserves the right to supplement the record as appropriate.

## STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). While the non-moving party is entitled to all favorable inferences, it must set forth specific facts showing that there remains a genuine issue of material fact for trial. *See* Fed.R.Civ.P. 56(e). A factual dispute is genuine only if "the parties' positions on the issue are

supported by conflicting evidence." International Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 199-200 (1st Cir. 1996). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In cases arising under Section 704 of the TCA, summary judgment is particularly appropriate because Congress has mandated that the cases are to be decided "on an expedited basis." 47 U.S.C. §332 (c)(7)(B)(v). See, Cellular Telephone Co. v. Town of Oyster Bay, 166 F.3d 490, 497 (2d Cir. 1999). In this case, moreover, the record has been fully developed and the case involves only legal issues, namely, did the Consent Decree operate to preempt the local and State procedural and substantive rules which have been invoked by the defendants to thwart Nextel's placement and construction of wireless facilities and, if not, was the State Board's denial of permission to place a wireless facility supported by substantial evidence contained in a written record?[2] Accordingly, there are no disputed material facts and summary judgment is warranted at this time.

## ARGUMENT

### I. The Purported Issue Concerning The Building Code Was Preempted

Once a state or local government is found to have violated the TCA (or, as in this case, once it agrees to a judgment containing such a finding), the carrier is entitled to a speedy federal remedy and "the state law that might ordinarily control such disputes is preempted in this setting." Brehmer v. Town of Wellfleet, 238 F.3d 117, 121 (1st Cir. 2001).

---

[2] The Court has also requested the parties to address the issue of notice, that is, when an action is commenced challenging administrative action (or inaction) and the case is within the federal question jurisdiction created by Section 704 of the Telecommunications Act of 1996, who, if anyone, is entitled to notice? Nextel addresses this issue as the final point to this Memorandum.

Although the focus of <u>Brehmer</u> was the preemption of state procedural law, the court's rationale would seem to apply with equal force in the present case, where the Town raised a new substantive issue (in response to continuing pressure from an abutter and two commercial entities) in order to avoid doing what it agreed to do and what this Court ordered: to allow Nextel to build the tower in accordance with the plans incorporated by reference in the Consent Decree.

Preemption of state law which would otherwise interfere with the implementation of a federal remedy imposed by this Court does not mean the Town would be without a remedy if a genuine safety issue or other important police power issue arose. Massachusetts law allows towns to require remedial action with respect to unsafe structures. <u>See</u>, <u>e.g.</u>, Mass.Gen.L. ch. 143 §§ 6-14. Federal procedural law, moreover, allows parties to modify or vacate judgments in certain extraordinary cases. <u>See</u>, <u>generally</u>, F.R.C.P. 60. Thus, if a genuine unanticipated (or overlooked) safety issue had arisen, it might well have been appropriate for the Town to ask this Court to modify the Consent Decree. Here, however, no safety issue was overlooked; the Consent Decree expressly requires Nextel to prove structural integrity, which it has already done. <u>See</u>, <u>e.g.</u>, Appendix to Statement of Undisputed Fact at Exhibit B (including engineering submissions made by Nextel to the Town). There has been no claim by the Town that these engineering reports failed to satisfy the conditions in paragraphs 2 and 3 of the Consent Decree. Thus, there is no extraordinary circumstance; the Town simply is trying to force Nextel to relocate the tower after it expressly agreed that the specified location was suitable.

Federal law does not permit parties or non-parties to engage in conduct designed to thwart the implementation of federal court orders. <u>Brehmer</u>, 238 F.3d at 122 ("Massachusetts law which 'stands as an obstacle to the accomplishment and execution of the full purposes and

objectives of Congress' . . . is . . . preempted."). See, Xiong v. State, 195 F.3d 424, 427 (8th Cir. 1999) (district courts should enjoin plaintiffs from maintaining claims when necessary to "effectuate and prevent the frustration of [an] earlier federal consent decree"). See, also, American Motor Sales Corp. v. Runke, 708 F.2d 202, 205 (6th Cir. 1983) (district courts should enjoin administrative action under a state scheme which appears to conflict irreconcilably with provisions in a federal statute).

## II.     The State Board's Decision Is Not Supported By Substantial Evidence

Even if the proceedings with respect to the State Building Code in general and the State Board's belated Decision in particular were not found to frustrate the earlier Consent Decree, the Decision fails to comply with the TCA's requirement that any decision denying permission to place or construct a wireless antenna tower must "be in writing and supported by substantial evidence contained in a written record." (Although this provision does not create any substantive rights, it does provide for "review [of State and local decisions] under the TCA." Southwestern Bell v. Todd, 244 F.3d 51, 59 (1st Cir. 2001). This procedural safeguard is designed to insure that decisions which deny a carrier the ability to place or construct a wireless facility are adequately supported and are not "irrational or substanceless," id., 244 F.3d at 57, 60, and, accordingly, federal court review of such decisions is plainly available. Id. at 58 (citation omitted)).

The State Board's Decision articulates the issue as under the Building Code whether Nextel's proposed replacement tower should be classified "as a radio/television antenna subject to the provisions of 780 C.M.R. § 3109 [or] . . . as a radio/television tower subject to the provisions of 780 C.M.R. § 3108." Decision at 2-3 (italics deleted). The Decision notes that at the September 11, 2003 hearing, two of the three Board members "were hesitant to agree with

[the Chairman's] position" which was "that [the replacement tower] should be defined as an antenna." Id. at 4. No decision was reached at the conclusion of that hearing.

On November 6, 2003 (nearly two months after the hearing and a week after Nextel filed its Second Motion to Enforce in the Prior Litigation), the Board held its "deliberations." According to the Decision, one Board member thought the proposed tower "resembled a tower rather than an antenna." The Chairman agreed that the relevant Code provision was "somewhat ambiguous" and the third member suggested consulting the dictionary. Following this colloquy, a motion to overturn the Building Inspector's ruling was made but did not pass. The Board then consulted "the 1993 BOCA Commentary relating to each section." The Board seemed to focus, however, only on the Commentary relating to Section 3109, which deals with roof mounted "antennas."

The Board thus ignored, at least according to the written record, the Commentary relating to Section 3108. In this regard, the Commentary to Section 3108 states, in pertinent part, that:

> [Section 3108] provides specific provisions for radio and television towers that are designed to maintain the structural integrity of the tower . . . . the structure is exempt from other provisions of the Code . . . . Section 3108.3 provides minimum construction criteria . . . The structural integrity of the tower is basically governed by Section 3108.4.

Decision, Attachment C. This Commentary thus establishes that towers are subject to specific structural criteria and therefore are "exempt" from other, more general provisions.

Under the substantial evidence test, the Board was not free to "ignore evidence that seem[s] to lead to an inconvenient conclusion." See Nextel Communications v. Town of Milford, (No. 00-11576-GAO) (D.Mass. 2001) (Slip. Op. at 8) (citation omitted). Despite this rule, the Board failed to explain why the proposed tower should be treated as an "antenna" under

either the plain language of the Code or under the Commentary. The Board thus ignored the evidence, in violation of the substantial evidence test.

Having thus veered sharply off course, the State Board never even examined, let alone commented on, the compelling and uncontroverted evidence submitted by Nextel that its proposed tower would, in fact, be completely safe. In this regard, Nextel had submitted an engineer's analysis of "foundation recommendations and allowable bearing capacity for foundation design and construction." See Appendix to Statement of Undisputed Fact at Exhibit B. It also submitted an engineer's report from the tower's designer, which certified that the tower would meet the loading requirements specified. Id. Nextel thus met the requirement of the Consent Decree to demonstrate that "the structural integrity of the new tower and support guys [will] withstand windloads, with particular regard to the safety of the occupants of the Site and abutting properties." Consent Decree at ¶ 3. Indeed, neither the Town nor the State Board has even suggested otherwise.

Since neither the Town nor the Building Inspector nor the State Board has ever raised any concern about Nextel's compliance with structural requirements, they may not do so now. Todd, supra at 59-60. Accordingly, the sole question to be decided is whether or not the State Board's ruling that a "tower" is an "antenna" can be sustained. Nextel respectfully submits that this ruling cannot be sustained, and must be overturned.

### III. The State Board Decision Violates State Law

Given the lack of sufficient basis for the State Board's decision under the substantial evidence test, Nextel is also entitled to a determination that the decision is invalid under state law and should be granted summary judgment on Count II of its Complaint.

IV. **Litigation Of Any Issue Herein Can And Should Proceed Without Notice To Any Person Or Entity Other Than Nextel, The Town and The State Board**[3]

A. **Notice of the Zoning Dispute**

This dispute had its origin in a straightforward application for a special permit, made by Nextel to the Town of Hanson Zoning Board of Appeals (the "ZBA"). See Complaint in the Prior Litigation. There has never been any issue raised concerning the Town's notice to abutters with respect to Nextel's application as required by applicable state law, and none is before the Court at this time.

After the ZBA denied Nextel's request for a special permit, Nextel appealed to this Court under 47 U.S.C. § 332 (c)(7)(B)(v) ("[a]ny person adversely affected by any final action . . . by a State or . . . or instrumentality thereof that is inconsistent with this paragraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis"). Nextel's complaint asserted three federal causes of action. Nextel was not required to join or otherwise give notice of that litigation to any party other than the Town. In this regard, Nextel's action was governed entirely by federal procedural law.[4] There is nothing in the TCA that might require a "person adversely affected by a final action" to join anyone other than the government entity which took that action, and there is no other source for such a requirement.

No other federal statute, for example, would require such joinder. To the extent an action brought under the TCA could be said to be governed by the federal Administrative

---

[3] This Court has raised questions of notice and, in its Procedural Order of December 10, 2003, asked the parties to address the same.
[4] The TCA expressly states that Nextel had 30 days to appeal, whereas its state law counterpart requires an appeal to be commenced within 20 days. See M.G.L. ch. 40-A, § 17. Congress could have required an action to be brought within whatever time is specified by state or local law, but it did not do so, thus evincing an intent to subject actions brought under the TCA only to federal procedural requirements.

Procedure Act, 5 U.S.C. § 3500, et. seq., that statute does not require notice to anyone other than the administrative agency involved in the decision which is being challenged. Indeed, third parties who participated in the administrative agency proceedings below have at best a limited ability to participate in subsequent judicial proceedings at all. See Alabama Power Co. v. ICC, 852 F.2d 1361 (D.C. Cir. 1988) (corporation could not substitute itself as a plaintiff after original applicant decided to drop a challenge to an agency ruling); Louisiana Public Service Comm'n v. Fed. Energy Regulatory Comm'n, 174 F.3d 218 (D.C. Cir. 1999) (intervenors are permitted to address only those issues already raised by the parties).

Even if this case were subject to Massachusetts procedural requirements, moreover, the result would be the same. See, M.G.L. ch. 40-A, § 17 (requiring applicant to serve only the municipality and the board's members).

It is perhaps worth mentioning that under Massachusetts law, once notice is served on the Town, it is deemed to give third persons constructive notice of the appeal. See, generally, Konover Management v. Planning Board of Auburn, 32 Mass.App.Ct. 319 (1992). Indeed, in the present case, the issue of Nextel's lawsuit and of the Consent Decree appears to have been well known in Hanson, yet no one attempted to intervene until April 21, 2003.[5]

This Court, then, quite properly proceeded to adjudicate Nextel's federal law claims in the Prior Litigation without requiring joinder of additional parties, and without requiring notice of the pending lawsuit to be given to anyone beyond the Town and the ZBA.

### B. Notice of the Building Code Dispute

The question of proper notice with respect to the Building Code issues raised by the Town in early 2003 is somewhat more complicated, but only because of a single Appeals Court

decision, <u>Rinaldi v. State Board</u>, 56 Mass.App.Ct. 668 (2002) which Nextel respectfully submits was incorrectly decided and is, in any event, distinguishable.

It cannot seriously be disputed that no notice to any third party was required when Nextel applied for a building permit. This was simply a request to a government official to perform a primarily ministerial act, similar to the innumerable applications which municipal officials receive and act upon every single day.

Once Nextel took an appeal to the State Board, however, its appeal became subject to the Board's enabling statute, M.G.L. ch. 143, § 100; to the regulations promulgated thereunder, 780 CMR; and, arguably at least, to the provisions of the Massachusetts Administrative Procedure Act, Mass.Gen.L. ch. 30-A.[6]

The enabling statute does not specify to whom notice is to be given when an appeal is taken to the State Board, but it does require the Board to "give at least ten days notice of the time and place of said hearing to all interested parties." M.G.L. ch. 143, § 100.

The State Board's regulations define "interested parties" as "all parties to the hearing [<u>i.e.</u>, the Town building inspector and the party filing the appeal] and . . . anyone else requesting notice in writing at least ten days prior [to the hearing]." 780 CMR § 122.3.3. <u>See, also</u>, State Building Code Appeals Board Filing Instructions and Application Forms, annexed hereto as Exhibit A (requiring appealing party to serve only the Building Official or other official whose decision is challenged). The approach taken by the Board in its regulations is consistent with the strong presumption that government officials will act lawfully and with the interests of all citizens in mind. <u>Konover, supra</u>, 32 Mass.App.Ct. at 326. It would make no sense to require

---

[5] <u>See</u> Correspondence from proposed intervenors dated April 30, 2001, June 21, 2001 and January 15, 2002, submitted by the proposed intervenors in the Prior Litigation as exhibits to their Memorandum dated June 6, 2003.
[6] All of this assumes no preemption, <u>see</u> Point I, <u>supra</u>.

such officials to search out any and all persons who might wish to offer opinions or arguments regarding how the government should act (or refuse to act) in any given case. Here, moreover, the pendency of the Prior Litigation, the Building Inspector's decision and subsequent court and administrative proceedings were all well known to the proposed intervenors, which is compelling evidence that "the system works" to provide whatever notice might be appropriate.

Nextel properly served the Hanson Building Inspector pursuant to applicable regulations and whether or not the Board then notified the proposed intervenors is immaterial; each of them appeared (through two sets of counsel) and were allowed to participate fully. Indeed, it is accurate to say that they had the Town's proxy and basically ran the hearing.

The discussion might end here were it not for the peculiar Appeals Court decision in Rinaldi v. State Building Code Appeals Board, 56 Mass.App.Ct. 668 (2002). In that case, a direct abutter did not receive notice of his neighbor's application to the State Board for two variances from specific building code provisions related to egress and to the location of window openings. Some eight months after the Board granted the variances, the abutter appealed to the Superior Court. The Superior Court dismissed the appeal, holding that the abutter had failed to appeal within the statutory thirty day time limit. The Appeals Court, however, found that the abutter should have received notice of the Board's proceedings because he "_might_ achieve the status of a party [under the general provisions of Mass.Gen.L. ch. 30A, § 11] and thus _might_ qualify as an 'interested party' under the provisions of G.L.C. ch. 143 § 100." 56 Mass.App. at 673 (emphasis added). As a remedy, the Appeals Court directed the Superior Court to vacate the decision of the Board so that the Board could hold a further hearing, presumably with notice to the abutter.

Rinaldi is bad law and should not be followed by this Court. See Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 71 (1st Cir. 2001) (federal courts can undertake a fair prediction as to the course the highest state court would take were it presented with an issue). Plainly, there is quite a significant difference between a rule which allows ordinary citizens who are interested enough in a pending dispute to monitor its progress to obtain information about it, and who can demonstrate an interest in pending proceedings sufficient to allow them to intervene on behalf of one side or the other, on the one hand, and a rule which *requires* an adjudicative agency or court to determine, a priori, all those persons who "might qualify" as a party, on the other. The Rinaldi court completely missed this distinction and thus undercut the principle (which it had cited with approval) that "there must be finality to proceedings before administrative agencies." 56 Mass.App. at 671-72 (citation omitted). If the result in Rinaldi is correct, there can be no finality because administrative proceedings could always be re-opened by someone claiming to be an interested party who did not receive notice.

Rinaldi is all the more remarkable because it flies in the face of Supreme Judicial Court precedent which makes clear that even where requisite statutory notice of an administrative hearing is not provided, an aggrieved party may be foreclosed from any remedy within a very short period of time. See Cappuccio v. Zoning Board of Appeals of Spencer, 398 Mass. 304 (1986) (construing 90-day time limit in ch. 40A, § 17 as a jurisdictional bar even if an aggrieved abutter failed to get notice of the proceedings as required by state statute). See, also, Kramer v. Ercolini, No. MICV2003-02714C, Slip Op. (Mass.Super.Ct. October 28, 2003), annexed hereto as Exhibit B.

Given Cappuccio and Kramer, a far more sensible result in Rinaldi would have been for the court to enforce the Board's regulation, which specifies that notice needs to be given only to

the building official and to anyone else who timely requests it. 780 CMR § 122.3.3. This regulation is entirely consistent with general administrative law and practice. It also does not run afoul of the Constitution. See, Kramer, supra. The Rinaldi court, nevertheless, did not appear even to consider it.

Rinaldi, if followed, would lead to a remarkable situation in which boards and/or applicants would have to decide in advance whether any given person "might qualify" as a party. If they guess incorrectly, there is no "finality" under state law, with the possible exception of the "finality" provided by ch. 40A, §7 (actions to remove structures unlawfully built must be brought within six years in cases in which the construction occurred in reliance on a permit, and within ten years in cases if no permit had been issued).

In any event, Rinaldi is distinguishable, in that it involved a request for a variance rather than a pure question of Code interpretation. In this regard, Rinaldi involved the exercise of the Board's power to grant variances contained in the eighth paragraph of M.G.L. ch. 143, § 100, whereas the present case involves a claim by "a party aggrieved by an interpretation" governed by the first paragraph of that statute. To the extent Rinaldi is allowed to stand, its application should be limited to cases involving variance requests. See Rinaldi, 56 Mass.App.Ct. at 672 (abutter entitled to notice because he "might be adversely affected by a *variance*") (emphasis added).

## CONCLUSION

For all of the foregoing reasons, this Court should grant judgment in favor of Nextel and against the Town and the State Board, and should enjoin the Town, the State Board and the Proposed Intervenors to take all actions necessary to allow construction of the proposed tower to

begin without further delay, including the issuance of a building permit, and to refrain from taking any action which would interfere with such construction.

Respectfully submitted,

**NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC. d/b/a NEXTEL COMMUNICATIONS**

By their attorneys,

**DEVINE, MILLIMET & BRANCH, PROFESSIONAL ASSOCIATION**

Dated: December 19, 2003         By: _____
Steven E. Grill, Esquire
111 Amherst Street, P.O. Box 719
Manchester, NH 03105-0719
(603) 669-1000

### CERTIFICATE OF SERVICE

I hereby certify on this 19th day of December 2003, a copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment was served upon Katharine Doyle, Esquire, counsel for the Town; Assistant Attorney General John Hitt, counsel for the State Board; Anthony Feeherry, Esquire, counsel for Marston Realty Trust and Hirschfeld Communications, LLC; and, Paul J. Moriarty, Esquire, counsel to Mr. and Mrs. DeFrancesco.

_____
Steven E. Grill, Esquire

J:\wdox\docs\clients\10339\55130\M0534600.DOC