UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 03-12563-DPW

| | |
|---|---|
| NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC, INC. d/b/a NEXTEL COMMUNICATIONS,<br><br>    Plaintiff<br><br>v.<br><br>THE TOWN OF HANSON, MASSACHUSETTS AND THE MASSACHUSETTS STATE BOARD OF BUILDING REGULATIONS AND STANDARDS,<br><br>    Defendants<br><br>MR. AND MRS. STEPHEN DEFRANCESCO, MARSTON REALTY TRUST AND HIRSCHFELD COMMUNICATIONS LLC,<br><br>    Proposed Intervenors | DEFENDANT TOWN OF HANSON'S OPPOSITION TO PLAINTIFF'S MOTION FOR <u>SUMMARY JUDGMENT</u> |

I.    <u>INTRODUCTION</u>

Now comes the defendant, the Town of Hanson, and hereby opposes the plaintiff's Motion for Summary Judgment. As grounds therefor, the Board of Appeals states that the decision of the Massachusetts Building Code Appeals Board ("BCAB") was supported by substantial evidence in the written record in accordance with the requirements of the Telecommunications Act of 1996 ("TCA") (Count I). The BCAB decision upheld the decision of Michael Kennedy, the Hanson Building Inspector (hereinafter referred to as "Building Inspector"), denying the application of plaintiff Nextel Communications of the Mid-Atlantic, Inc. ("Nextel") to erect a 130-foot-tall roof-mounted antenna at 141R Liberty Street. The decision of

the BCAB was not arbitrary or capricious and was issued on legally tenable grounds (Count II). In addition, the Agreement for Judgment and subsequent Court Order in the related case of Nextel Communications v. Town of Hanson, C.A. No. 00-11417-DPW did not pre-empt the decision of the Hanson Building Inspector or the BCAB in this matter, as the Order dealt exclusively with issues of zoning, not the State Building Code, which is the subject of the present matter (Count III).

Therefore, the Town respectfully requests that the Court deny Nextel's Motion for Summary Judgment and award it judgment as a matter of law.

II.     FACTS & PROCEDURAL HISTORY

The Town refers to and incorporates herein its Response to the Plaintiff's Local Rule 56.1 Statement of Undisputed Facts.

III.    ARGUMENT

    A.   The Decision Of The BCAB Is Supported By Substantial Evidence In The Written Record (Count I).

The TCA, 47 U.S.C. § 332(c)(7)(B)(iii), provides:

> any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

By now there is a well-developed body of law applying the substantial evidence standard of review to local zoning decisions under the TCA. As the First Circuit stated in Southwestern Bell Mobile Systems, Inc. v. Todd, 244 F.3d 51, 58 (1st Cir. 2001) ("Todd"): "[t]he 'substantial evidence' standard of review is the same as that traditionally applicable to review of an administrative agency's findings of fact [citations omitted]. Judicial review under this standard, 'even at the summary judgment stage, is narrow. [Citation omitted].'" The Fourth Circuit in AT&T Wireless PCS, Inc. v. City Council of the City of Virginia Beach, 155 F.3d 423, 428-29

(4th Cir. 1998) ("Virginia Beach") initially articulated the standard: "While substantial evidence is more than a scintilla, it is also less than a preponderance …[I]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 155 F.3d at 430 (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). In reviewing a decision under the TCA, "a court is not free to substitute its judgment for the agency; it must uphold a decision that has 'substantial support in the record as a whole' even if it might have decided differently as an original matter." Virginia Beach, 155 F.3d at 430 (citation omitted). It is not the reviewing court's role to determine "whether the [board] made the best or correct decision." ATC Realty, LLC v. Town of Kingston, NH, 303 F.3d 91 (1st. Cir. 2002) (reversing decision of district court that found that permit denial was not based upon substantial evidence). Accordingly, the reviewing court examines the written record to determine whether or not there was substantial evidence that the application was denied on permissible grounds. If the denial is proper under state law, the denial meets the substantial evidence test. Omnipoint Communications MB Operations, LLC v. Town of Lincoln, 107 F. Supp.2d 108, 116 (D. Mass. 2000) ("Lincoln") (even though the court held that the board's decision constituted an effective prohibition of service, the denial was valid under state law).

The basis for the BCAB's affirmation of the Building Inspector's denial was that the proposed construction consisted of a "roof-mounted antenna" subject to 780 CMR 3109.1, rather than a radio or television tower subject to 780 CMR 3108, as argued by Nextel. The State Building Code does not provide a definition of either the term "tower" or "antenna." See 780 CMR, generally. Lacking such clarification, the members of the BCAB noted that the State Building Code is based upon the 1993 version of the Building Officials & Code Administrators International, Inc.'s ("BOCA") National Building Code. See Town's Response to Plaintiff's

3

Local Rule 56.1 Statement of Facts, Exhibit 1.  The BOCA Code provided commentary to the text on which 780 CMR 3108 and 3109.1 are based.  <u>Id.</u>, Exhibit 1, Attachment C.  Upon examination of the BOCA text and the plans provided by Nextel, the BCAB determined that the proposed structure was indeed "roof-mounted" and therefore subject to the restrictions of 780 CMR 3109.1, which requires that the "installation of <u>any</u> antenna structure mounted on the roof of a building shall not be erected nearer to the lot line than the total height of the antenna structure above the roof, nor shall such structure be erected near electric power lines or encroach upon any street or other public space." (emphasis supplied).

  The commonly used tools of statutory construction support the interpretation of the Building Code made by the BCAB and the Building Inspector.  This Code, 780 CMR 3109.1, clearly states: "[t]he installation of <u>any</u> antenna structure mounted on the roof of a building shall not be erected nearer to the lot line than the total height of the antenna structure above the roof, nor shall such structure be erected near electric power lines or encroach upon any street or other public space." (emphasis supplied).  "A general principle of statutory construction provides that a term should be given its plain and ordinary meaning, unless a contrary legislative intent is demonstrated."  <u>Town of Boylston</u> v. <u>Comm'r of Revenue</u>, 434 Mass. 398, 405, 749 N.E.2d 684, 689 (2001); <u>see</u> <u>also</u> <u>Lopez-Soto</u> v. <u>Hawayek</u>, 175 F.3d 170, 173 (1st Cir.1999); <u>C.K. Smith & Co.</u> v. <u>Motiva Enters. LLC</u>, 269 F.3d 70, 76 (1st Cir. 2001); <u>Henry</u> v. <u>Bd. of Appeals of Dunstable</u>, 418 Mass. 841, 843, 641 N.E.2d 1334 (1994).  In its first Motion to Enforce Consent Decree, Nextel attempted to argue that the Court should edit 780 CMR 3109.1 and extract the "any" to replace it with "such" so as to refer to the antecedent sentences relating to private radio or television antennas under twelve feet tall.  The courts, however, are not permitted to add words to a regulation that its drafters "did not see fit to put there."  <u>General Elec. Co.</u> v.

4

Department of Envtl. Protection, 429 Mass. 798, 803, 711 N.E.2d 589 (1999) (quoting King v. Viscoloid Co., 219 Mass. 420, 425, 106 N.E. 988 (1914)); see also Pritzker v. Yari, 42 F.3d 53, 67-68 (1st Cir. 1994) ("As a fundamental principle of statutory construction, we will not depart from, or otherwise embellish, the language of a statute absent either undeniable textual ambiguity or some other extraordinary consideration, such as the prospect of yielding a patently absurd result."); Comm'r of Revenue v. Cargill, Inc., 429 Mass. 79, 82, 706 N.E.2d 625 (1999) ("Where, as here, the language of the statute is clear, it is the function of the judiciary to apply it, not amend it").  Nextel argued instead that its antenna should be governed only by 780 CMR 3109.2, which contains no provisions for setback, therefore asserting, illogically, that the drafters of the Building Code only intended antennas under twelve feet tall to comply with setback provisions, whereas taller antennas had no such limitations.[1]  See Motion to Enforce Consent Decree, C.A. No. 00-11417-DPW; Exhibit B-K, Exhibit B-L.

At the BCAB, Nextel changed the theory of its argument and argued that, instead of its original assertion that 780 CMR 3109.2 governed its proposed roof-mounted antennal structure, the structure was instead a "tower" under 780 CMR 3108.  Nextel now argues that classifying its structure as a "tower" under 780 CMR 3108 exempts it from the safety restrictions for roof-mounted antennas imposed by 780 CMR 3109.1.  The canons of statutory construction are clear that regulations should not be interpreted so as to yield absurd results.  Pritzker, 42 F.3d at 68; Sullivan v. Brookline, 435 Mass. 353, 360, 758 N.E.2d 110 (2001) (It is a fundamental principle of statutory construction that "statutory language should be given effect consistent with its plain

---

[1] "Approval shall be secured for all roof-mounted antennal structures more than 12 feet (3658 mm) in height above the roof. The application shall be accompanied by detailed drawings of the structure and methods of anchorage. All connections to the roof structure shall be properly flashed to maintain water tightness. The design and materials of construction shall comply with the requirements of 780 CMR 3108.3 for character, quality and minimum dimension." 780 CMR 3109.2

meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result."); Commonwealth v. Wallace, 431 Mass. 705, 708, 730 N.E.2d 275 (2000) (" 'A literal construction of statutory language will not be adopted when such a construction will lead to an absurd and unreasonable conclusion....'  Nor shall we interpret a statute in such a way as to make a nullity of its provisions if a sensible construction is available."); Commonwealth v. Williams, 427 Mass. 59, 62, 691 N.E.2d 553 (1998) ("If the language of the statute is 'fairly susceptible [of] a construction that would lead to a logical and sensible result' ... we will construe [it] so 'as to make [it an] ... effectual piece[ ] of legislation in harmony with common sense and sound reason.' "); Dillon v. Massachusetts Bay Transp. Auth., 49 Mass.App.Ct. 309, 315-316, 729 N.E.2d 329 (2000) ("[Statutory] interpretation should tend to preserve the substance of a statute rather than diminish it, [and] should not override common sense, or produce absurd or unreasonable results").  Indeed, a regulation should be interpreted so as to achieve a result consistent with its purpose, which, in the case of the State Building Code, is the safeguarding of public safety.  Passamaquoddy Tribe v. Maine, 75 F.3d 784, 788 (1st Cir.1996) ("The chief objective of statutory interpretation is to give effect to the legislative will."); Hanlon v. Rollins, 286 Mass. 444, 447, 190 N.E. 606 (1934) (courts interpret a statute "to the end that the purpose of its framers may be effectuated."); accord Boston Police Patrolmen's Ass'n v. Boston, 435 Mass. 718, 719-720, 761 N.E.2d 479 (2002).

    In the present case, interpreting the Building Code so as to be consistent with its purpose, namely, public safety, merely requires that the Court adhere to the plain language of the Building Code and affirm the interpretation of the BCAB and the Building Inspector that "any" roof-mounted antenna should "not be erected nearer to the lot line than the total height of the antennal structure above the roof, nor shall such structure be erected near electric power lines…"

Nextel does not debate that the proposed structure is roof-mounted, that the proposed structure is nearer to the lot line than the total height of the antenna structure above the roof, or that the structure is very near to both electric power lines and a public street, all of which pose significant safety concerns. See Appendix, Exhibit K, ¶12, Exhibit L, ¶3. Specifically, if the integrity of the antenna were compromised or if it were to collapse onto the neighboring building, street or other public area, abutters, passersby and the general public would be placed in danger. Id. Where an antenna is erected upon the roof, the structural integrity of the underlying building must be factored into consideration of the safety of the proposed antenna. The Building Inspector learned that the roof of the structure was leaking, and Nextel informed him, through their agent, that they considered their responsibility to make structural repairs to the building to be limited to the immediate area under the antenna. See Appendix, Exhibit K, ¶8.

More significantly, Nextel has not carried its burden of proof of demonstrating that the proposed structure is indeed a "tower" rather than a "roof-mounted antenna" as the BCAB concluded. Instead, it merely criticizes the conclusion of the BCAB and argues that whatever the proposed structure is, it is completely safe in the opinion of Nextel's own agents. See Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, p.10. Nextel has therefore failed to show this Court why the BCAB's conclusion that the proposed roof-mounted structure was subject to the restrictions of 780 CMR 3109.1 on roof-mounted antennas was not supported by substantial evidence. Instead, it ignores the legal issues and argues that regardless of how the structure is defined, it is safe. The only evidence it proffers of such safety, however, is the report of an engineer and a tower designer, neither of which explicitly verify the safety of even the proposed structure, but instead merely make recommendations as to how the structure should be erected. Appendix, Exhibit B-C, B-D.

By contrast, the Town has provided the affidavit not only of its own Building Inspector, but also an affidavit by a party uninvolved in the litigation, Timothy Fitzgerald, Building Inspector for the Town of Norwell (hereinafter referred to as "Norwell Building Inspector"), attesting to the significant safety concerns posed by Nextel's proposed construction. See Appendix, Exhibit B-K, ¶12; Appendix, Exhibit B-L, ¶3. The Building Inspector visited the Property and spoke to the occupant, who showed the Building Inspector that the roof was leaking in certain spots. See Appendix, Exhibit B-K, ¶6. The Building Inspector also learned that the proposed antenna would be moving ten feet closer to one of the abutting properties rather than replacing the existing antenna in its current location on the roof. Id. The Property's occupant showed the Building Inspector a guy wire that had been hit by a piece of equipment and had snapped back to the existing antenna. Id. The Building Inspector determined that there are two transformers mounted on a utility pole approximately seventy-five feet from the structure according to the plans provided by Nextel. See Appendix, Exhibit B-K, ¶13. If the transformers were disrupted by the antenna, Liberty Street (Route 58) would be affected, including residential and commercial properties. Id.

The Building Inspector also determined that on one side of the structure on the Property is an auto body shop attached to a residential dwelling. Id. The distance between the antenna and that lot line is only twenty-eight feet. Id. According to the plans provided by Nextel, the antenna is only one hundred feet from the residential dwelling itself. Id. The Building Inspector observed that on the other side of the structure, there is only ninety-seven feet to the lot line of another residential abutter, Mary F. Wolfe. Id. Although the Nextel plans do not denote the actual location of her dwelling, the Hanson Zoning Bylaws permit her dwelling to be twenty feet

from her side lot line, so the dwelling could be as close as one hundred seventeen feet from the antenna.  Id.

The Building Inspector questioned one of Nextel's agents regarding the condition of the roof and inquired as to what repairs Nextel intended to make.  See Appendix, Exhibit B-K, ¶8.  Nextel's agent responded that Nextel would repair the roof in the immediate area of the antenna, but would not repair any other part of the roof, as that was the property owner's responsibility.  Id.

Both the Hanson and Norwell Building Inspectors note that if the integrity of an antenna were compromised or if it were to collapse onto a neighboring building, street or other public area, abutters, vehicles, pedestrian passersby and the general public would be put in danger.  See Appendix, Exhibit B-K, ¶12; Appendix, Exhibit B-L, ¶3.  If an antenna became tangled in or severed a utility wire, the community outside the immediate neighborhood may be affected.  Id.  In addition, people in the immediate vicinity may be jeopardized by a live cut wire.  Id.  The setbacks in 780 CMR 3109.1 minimize these risks by placing a buffer between an antenna and the people and utilities it could jeopardize.  Id.  The collapse of a larger antenna has a greater potential to damage neighboring buildings (and creating a danger to those inside them), fall across a street or public space, or disrupt a utility wire, merely due to its size.  See Appendix, Exhibit B-K, ¶14; Appendix, Exhibit B-L, ¶4.

Nextel has failed to carry its burden of proof on summary judgment that the BCAB's decision was not supported by substantial evidence in the written record, as it has failed to demonstrate how the BCAB's determination that the proposed structure was an "roof-mounted antenna" under 780 CMR 3109.1, rather than a "tower" under 780 CMR 3108.  The Town is entitled to judgment as a matter of law, as it has demonstrated that the BCAB's determination

9

that the structure is a "roof-mounted antenna" subject to 780 CMR 3109.1 is consistent with the proposed construction, as well as the public safety purpose of the Building Code itself. Furthermore, as the proposed structure does not comply with 780 CMR 3109.1, and poses significant safety concerns as attested by the Hanson Building Inspector and Norwell Building Inspector, the Court should uphold the determination of the BCAB and the Building Inspector that the issuance of a building permit is not warranted.

> B. The Decision of the BCAB Was Not Arbitrary Or Capricious, And Instead, Was A Legally Tenable Interpretation Of The Building Code Entitled To Deference By This Court (Count II).

General Laws c.30A was enacted in part to establish minimum procedural standards for the conduct of adjudicatory proceedings as defined in the statute, while permitting those State administrative agencies covered by the act to develop and adopt additional procedural requirements. Rinaldi v. State Building Code Appeals Bd., 56 Mass.App.Ct. 668, 672, 779 N.E.2d 688, 691 (2002) (citing Cella, Administrative Law and Practice § 501 (1986)). The BCAB is an administrative agency and its adjudicatory proceedings are subject to the provisions of G.L. c.30A. Rinaldi, 56 Mass.App.Ct at 673, 779 N.E.2d at 692. It is also permitted to develop regulations governing matters within its jurisdiction and its own procedures. Id. at 672, 779 N.E.2d at 691; G.L. c.30A §1(2); see also She Enterprises, Inc. v. State Bldg. Code Appeals Bd., 20 Mass.App.Ct. 271, 276 n.5, 480 N.E.2d 39, 44 n.5 (1985) (finding that the BCAB was composed of the State Building Code Commission which promulgated the State Building Code). Judicial review of an agency decision is confined to the record. G.L. c. 30A, § 14(5). The reviewing court must give due weight to the agency's experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Comm'r of Public Welfare, 412 Mass. 416, 420, 589 N.E.2d 1224 (1992). The reviewing court

may not substitute its judgment for that of the agency.  Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm'n, 386 Mass. 414, 420-21, 436 N.E.2d 380 (1982).  The agency's decision shall be sustained if it is supported by substantial evidence, and judicial inquiry is limited to a determination of whether, within the administrative record, there is such evidence as a reasonable mind might accept as adequate to support the agency's conclusion. Seagram's Distillers Co. v. Alcoholic Beverages Control Comm'n, 401 Mass. 713, 721, 519 N.E.2d 276 (1988).  "In reviewing the decision of an administrative agency we give weight to its interpretation of the statutes under which it operates and the regulations which it has formulated."  Fire Chief of Cambridge v. State Bldg. Code Appeals Bd., 34 Mass.App.Ct. 381, 384-85, 611 N.E.2d 736, 738 (1993); see also Manning v. Boston Redev. Auth., 400 Mass. 444, 453, 509 N.E.2d 1173 (1987); Worcester Sand & Gravel Co. v. Bd. of Fire Prevention Regulations, 400 Mass. 464, 466, 510 N.E.2d 267 (1987).  "An agency's reasonable interpretation of its own regulations, particularly if consistently applied, is entitled to respect in the courts."  She Enterprises, Inc., 20 Mass.App.Ct. at 278, 480 N.E.2d at 44.  Absent clear error, the agency's interpretation of its own rules is entitled to deference.  Hurst v. State Ballot Law Comm'n, 428 Mass. 116, 120, 697 N.E.2d 523 (1998).  Such an interpretation will be overturned "only if it is arbitrary, unreasonable, or inconsistent with the plain terms of the rule itself." Massachusetts Auto Body Ass'n v. Comm'r of Insurance, 409 Mass. 770, 781, 570 N.E.2d 147 (1991).

The "statutory provisions dealing particularly with the promulgation of the Code and its administration, G.L. c. 143, §§ 93-100, emphasize as a goal attaining uniform Statewide standards."  Fire Chief of Cambridge, 34 Mass.App.Ct. at 384, 611 N.E.2d at 738; Shriners' Hosp. for Crippled Children v. Boston Redev. Auth., 4 Mass.App.Ct. 551, 560-561, 353 N.E.2d

778 (1976). The objective of the State Board of Building Regulations and Standards is "[u]niform standards and requirements for construction and construction materials, compatible with accepted standards of engineering and fire prevention practices, energy conservation and public safety." G.L. c. 143, § 95(a). "In an effort to facilitate this goal, all State and local building inspectors are required by statute to attend a continuing educational program of instruction prepared and administered by the State Board of Building Regulations and Standards, the agency charged with promulgation of the Code." Fire Chief of Cambridge, 34 Mass.App.Ct. at 384 n.6, 611 N.E.2d at 738 n.6; G.L. c. 143, § 99.

In this case, the BCAB was required to make an interpretation of the Building Code, "a matter of nuance" and "a classic example of when the expert technical knowledge of an administrative agency comes to bear and should not be disturbed in the absence of powerful evidence to the contrary." Fire Chief of Cambridge, 34 Mass.App.Ct. at 385, 611 N.E.2d at 738. The party appealing bears the burden of proving the invalidity of the Board's decision. Massachusetts Ass'n of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 263, 748 N.E.2d 455 (2001); Merisme v. Bd. of Appeals on Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474, 539 N.E.2d 1052 (1989). As stated above, Nextel has failed to carry that burden and the Board should affirm the Board's decision.

  C. The April 19, 2001 Court Order Limits Itself To Zoning Relief And Does Not Preempt The Decision Of The Building Inspector, Or, By Implication, The BCAB On Nextel's Compliance With The State Building Code (Count III).

Nextel cites the decision of Brehmer v. Town of Wellfleet, 238 F.3d 117 (1st Cir. 2001) for the proposition that the April 19, 2001 Order of this Court can preempt further action by local officials charged with enforcing separate state and local laws and excuse Nextel from complying with such separate state and local laws. Reliance on Brehmer for such a proposition is

12

misplaced.  In Brehmer, the appellants, a group of Wellfleet citizens, sought to set aside a consent judgment reached by the Town of Wellfleet ("Wellfleet") and Omnipoint Communications, Inc. ("Omnipoint") awarding a special permit to Omnipoint that had been originally denied by the Wellfleet Planning Board.  Brehmer, 238 F.3d at 119.  The Wellfleet citizens argued that consent judgment violated Massachusetts law, which required a remand to the Planning Board for further proceedings regarding the grant of the special permit.  Id.  The United States Court of Appeals for the First Circuit ruled that the TCA preempted the "Massachusetts law requiring a remand for further proceedings."  Id. at 122.  The Brehmer decision did not rule that the consent judgment preempted state law, but instead clearly stated that the TCA itself preempted Massachusetts law, regarding a remand to local officials for reconsideration of the same relief that was the subject of a settlement agreement between the Town and the telecommunications carrier.  Id.

     In contrast to the Brehmer decision, Nextel does not argue that the Town (or the abuttor/intervenors) is attempting to remand the issue of the special permit back to the Board of Appeals for reconsideration.  Instead, Nextel argues that the April 19, 2001 Order addressed structural issues and therefore no review for compliance with the State Building Code should have been permitted prior to the issuance of a building permit.  Nextel's argument is not supported by the Brehmer decision, the language of the April 19, 2001 Order itself, on the present facts.  The April 19, 2001 Order explicitly states that judgment on one count of the Complaint was entered on behalf of Nextel and that:

> [A] Special Permit…is issued to Nextel to replace an existing 117-foot tall antenna located at 141R Liberty Street, Hanson, Massachusetts (the "Property") with a 130-foot tall wireless personal wireless services facility with the following conditions:

13

1. Prior to commencement of construction, Nextel shall post a bond for $25,000 for the repair or removal of the tower in the event of abandonment or non-use for a period of six months.
2. Construction of the personal wireless services facility shall be performed in accordance with the application submitted by Nextel and the plans prepared by Turning Mill Consultants in support of Nextel's application for a special permit.
3. Prior to commencement of any work authorized by the Special Permit, Nextel shall submit detailed drawings and calculations, stamped by a structural engineer licensed in the Commonwealth of Massachusetts showing the following:

    a. Structural integrity of the new tower and support guys to withstand windloads, with particular regard to the safety of the occupants of the site and abutting properties, including a statement of measures to be employed to ensure that the facility will not fall onto abutting properties.

    b. Structural examination of the existing building and foundation design of the proposed tower, in view of the condition of the existing building.

4. The personal wireless services facility shall accommodate co-location by another personal wireless service provider.

5. Prior to construction of the personal wireless services facility, Nextel shall expend up to $2,000 to cleanup the Property, including performing the removal of debris, unused autos and auto parts.

"Conditions of a variance or a special permit are subsumed in the provisions of c. 40A and ordinances or by-laws under which they are promulgated; they are part of the zoning law to be enforced." Wyman v. Zoning Bd. of Appeals of Grafton, 47 Mass.App.Ct. 635, 715 N.E.2d 459 (1999). Thus, the conditions of the special permit are exclusively a mechanism of zoning and must be treated as such. Conditions of a special permit do not preclude review by other local officials who are charged with enforcing different areas of state and local law. Compare Sangiolo v. Bd. of Aldermen of Newton, 57 Mass.App.Ct. 911, 783 N.E.2d 830 (2003) (denying abutters' appeal of zoning relief where grounds of appeal was based on alleged violation of state

Rivers Act over which the Conservation Commission and Department of Environment Protection had jurisdiction).

Nowhere in the April 19, 2001 Order is any obligation placed upon the Building Inspector, or, for that matter, any other town board with separate jurisdiction, such as the Board of Health, Conservation Commission, or Historic District Commission. Both Massachusetts law and the TCA indicate that the authority of such town boards may not be usurped by the Board of Appeals or the Court unless expressly authorized. See G.L. c.40B §20-23 (permitting applicant for comprehensive permits to apply to zoning board of appeals for waivers of local bylaws or regulations normally under the authority of several local boards, but requiring applicants to seek approval from Conservation Commission and Board of Health for compliance with or waivers of state laws within their jurisdiction); 47 U.S.C. §332(c)(7)(A) ("Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities."). The April 19, 2001 Order is explicitly limited to granting a special permit with conditions. Nextel did not apply for a building permit until February 23, 2003, almost two years after the date of the Order. The Brehmer Court did not rule that a settlement agreement between a municipality and telecommunications carrier regarding one form of relief (here, as in Brehmer, a special permit under local zoning bylaws) excuses the telecommunications carrier from seeking any other relief normally required by state or municipal law, nor does the First Circuit suggest that the settlement agreement itself has preemptive power over state or municipal law. See Brehmer, generally.

Neither the Brehmer decision nor the body of law pertaining to federal preemption of state or local law supports the argument that a settlement agreement has such a preemptive

effect.  The theories of preemption operate on "'the assumption that the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress.'"  Greenwood Trust Co. v. Com. of Mass., 971 F.2d 818, 823 (1st Cir. 1992) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).  Courts must tread cautiously in this arena because the authority to displace a sovereign state's law is "an extraordinary power.... that we must assume Congress does not exercise lightly."  Gregory v. Ashcroft, 501 U.S. 452, 460, (1991).  "Even federal statutes that contain express preemption clauses must be viewed through the prism of this assumption."  Greenwood, 971 F.2d at 823.

> Where ... the field that Congress is said to have preempted has been traditionally occupied by the states ... we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless there was the clear and manifest purpose of Congress.

Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947).

In General Motors Corporation v. Abrams, 897 F.2d 34 (2d Cir. 1990), the Second Circuit refused to confer preemptive power against the requirements of the New York New Car Lemon Law ("NY Lemon Law") to a consent judgment reached between the Federal Trade Commission ("FTC") and General Motors Corporation ("GM"), finding that such an interpretation would immunize GM from the NY Lemon Law whether other car manufacturers would be required to comply with it, an "imbalance" that the Court refused to endorse.  In the Abrams case, the 1983 Consent Order between the FTC and GM required GM to implement a nationwide third-party arbitration program to settle complaints of individual owners relating to defective powertrain components in GM cars and trucks.  Abrams, 897 F.3d at 37.  Also in 1983, New York enacted the NY Lemon Law, which required that manufacturers repair free of charge any new motor vehicle that did not conform to its express warranties within two years or 18,000 miles and rendered a vehicle a "lemon" if it was unrepairable after a reasonable number of

16

attempts within two years or 18,000 miles, as long as the consumer first resorted to the manufacturer's informal dispute mechanism (if one existed that complied with minimum federal standards). Id. at 38. In 1986, amendments to the NY Lemon Law set forth additional minimum requirements for the manufacturers' informal dispute settlement mechanism. Id. The 1986 amendments conflicted with the 1983 Consent Order between GM and the FTC. Id.

The Abrams court concluded that a consent order entered into by a federal administrative agency could preempt state law under certain circumstances, because federal administrative regulations were accorded the same preemptive effect as federal statutes and certain federal agencies were authorized to exercise their jurisdiction not only through rule-making, but also through case-by-case adjudication. Id. at 39. Both types of agency action had the binding force of "federal law." Id. The Abrams court therefore ruled that "a consent order reflecting a reasonable policy choice of a federal agency and issued pursuant to a congressional grant of authority may preempt state legislation." Id. The Abrams court added, however, that the "mere fact that the [Consent] Order has been entered, however, is insufficient to preclude supplemental state regulation…[a]s with any preemption analysis, the lodestar of our inquiry is the 'intent' of the FTC in entering into the Consent Order." Id. at 40.

In the present case, no federal administrative agency authorized by Congress to make federal law through rule-making or a quasi-judicial process entered into a consent order, let alone entered into a consent order with the intent of preempting state law. Instead, a telecommunications carrier and a Massachusetts town entered into an Agreement for Judgment to settle a dispute over the denial of a zoning special permit. Consistent with the nature of Nextel's original appeal, the April 19, 2001 Order of the Court only grants a special permit with conditions to provide Nextel with the zoning authority it needed to construct its tower. Even

17

Nextel has acknowledged the restrictions imposed upon construction by the Building Code in addition to local Zoning Bylaws by submitting different plans to the Building Inspector than those submitted to the Zoning Board of Appeals. <u>Compare</u> Appendix, Exhibit A-B <u>with</u> Exhibit B-B.

      Disgruntled by the discovery that its representatives failed to realize during the administrative process that a provision of the State Building Code created a separate obstacle for it to hurdle, two years after the April 19, 2001 Order was issued, Nextel argues that the Order immunizes it from the necessity of demonstrating compliance with the State Building Code before acquiring a building permit. As the <u>Abrams</u> court decided, Nextel's argument that it is protected from state law not even addressed by the April 19, 2001 Order creates an "imbalance" amongst telecommunications providers in Hanson. While other telecommunications providers must comply with the local Zoning Bylaws and State Building Code, endorsement of Nextel's argument would exempt it from compliance with the State Building Code. Such an "imbalance" is explicitly discouraged in the TCA. <u>See</u> 47 U.S.C. §332(c)(7)(B)(i)(I) ("[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof…shall not unreasonably discriminate among providers of functionally equivalent services…").

      Nextel's argument that the April 19, 2001 Order preempts its need to comply with the State Building Code is therefore unsupported by the <u>Brehmer</u> decision, the language of the Order itself, and the body of law governing federal preemption of state law. The Town should be awarded judgment as a matter of law on Count III of the Complaint.

IV.    CONCLUSION

WHEREFORE, the Town respectfully requests that this Court grant judgment as a matter of law in its favor.

DEFENDANTS,

By their attorneys,

/s/
Joel B. Bard (BBO# 029140)
Katharine Goree Doyle (BBO# 634131)
Kopelman and Paige, P.C.
 Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

210058/Hans/0127