UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. NO. 03-12563-DPW

NEXTEL COMMUNICATIONS OF THE
MID-ATLANTIC, INC. d/b/a NEXTEL
COMMUNICATIONS,

    Plaintiff

v.

THE TOWN OF HANSON,
MASSACHUSETTS AND THE
MASSACHUSETTS STATE BOARD OF
BUILDING REGULATIONS AND
STANDARDS,

    Defendants

MR. AND MRS. STEPHEN
DEFRANCESCO, MARSTON REALTY
TRUST AND HIRSCHFELD
COMMUNICATIONS LLC,

    Proposed Intervenors

DEFENDANT TOWN OF
HANSON'S RESPONSE
TO PLAINTIFF'S LOCAL
RULE 56.1 STATEMENT OF
UNDISPUTED FACTS

    Defendant Town of Hanson ("Town") hereby responds to the Plaintiff's Local Rule 56.1 Statement of Undisputed Facts as follows:

    1.    Undisputed.

    2.    Undisputed.

    3.    Disputed as to the characterization of the Agreement reached between the parties as a "Consent Decree" and disputed as to any contention made by Nextel Communications Of The Mid-Atlantic, Inc. D/B/A Nextel Communications ("Nextel") that the Town needed to reserve its "rights" regarding the enforcement of state and local law regarding matters outside the scope of the Prior Litigation.

4. This paragraph contains a pure contention of law, not fact.

5. Disputed as to the characterization that the Town itself "thwarted" the efforts of Nextel to obtain a building permit. The representative for Nextel had failed to apply for site plan approval when it originally sought a special permit in 2000. Nextel's representative admitted during the administrative process that it intended to secure site plan approval <u>after</u> it received a special permit. Appendix, Exhibit A-E, ¶2. Nonetheless, after receiving the special permit through the April 19, 2001 Agreement for Judgment, Nextel refused to apply for site plan approval. In the spirit of settlement, the Town agreed to waive the requirement to avoid further litigation. The remaining statements in this paragraph are undisputed.

6. Nextel has neglected to include a substantial portion of the text of 780 CMR 3109.1. The complete language of 780 CMR 3109.1 is as follows:

> A building permit is not required for roof installation of antennal structures not more than 12 feet (3658 mm) in height for private radio or television reception. Such a structure shall not be erected so as to injure the roof covering, and when removed from the roof, the roof covering shall be repaired to maintain weather and water tightness. The installation of any antenna structure mounted on the roof of a building shall not be erected nearer to the lot line than the total height of the antennal structure above the roof, nor shall such structure be erected near electric power lines or encroach upon any street or other public space.

7. Disputed. <u>See</u> Appendix, Exhibit B-B, Plans, Exhibit B-K, Affidavit of Michael Kennedy, Exhibit B-L, Affidavit of Timothy Fitzgerald,

8. The Town does not have sufficient information or knowledge to dispute what "Nextel concluded." Disputed that the Town was in fact "going out of its way" to thwart the April, 2001 settlement. <u>See</u> Appendix, Exhibit B-K. The remaining statements of fact in this paragraph are undisputed.

9. Undisputed.

10. Undisputed as to the first sentence (the Building Inspector had been on vacation when the order was received by Town Counsel, who received a copy of the order from Nextel's counsel, having never received a copy from the Court). The second sentence is a pure contention of law.

11. Undisputed, except for the allegation that the Board did not take any further action. See Exhibit 1.

12. Undisputed.

13. Undisputed.

14. Undisputed.

15. The Town does not have sufficient information or knowledge to dispute whether personal service was made upon the State Board or counsel for Mr. and Mrs. DeFrancesco, Marston Realty Trust and Hirschfield Communications. The remaining statements of fact in this paragraph are undisputed.

16. The Town does not have sufficient information or knowledge to dispute the motivation behind the timing of the issuance of the decision by the State Building Code Appeals Board ("BCAB"). The decision of the BCAB speaks for itself.

17. Undisputed.

18. This paragraph is not a statement of fact, but instead a characterization of the evidence submitted by Nextel in support of its motion for summary judgment.

### TOWN'S LOCAL RULE 56.1 STATEMENT OF FACTS

1. On June 29, 2000, the Board of Appeals denied Nextel's application for a Special Permit to replace an existing 117-foot-tall tower with a 130-foot-tall tower. Nextel filed a Complaint in the U.S. District Court for the District of Massachusetts (Civil Action No. 00-

11417-DPW), alleging that the <u>Board of Appeals'</u> decision was not supported by adequate evidence within the written record in violation of the Telecommunications Act of 1996 ("TCA"), 42 U.S.C. §337 (Count I); that the <u>Board of Appeals'</u> decision prohibited or had the effect of prohibiting the provision of wireless services within the Town in violation of the TCA (Count II); that the <u>Board of Appeals'</u> decision was arbitrary and capricious in violation of the Zoning Act, G.L. c.40A (Count III); and that the <u>Board of Appeals</u> had denied Nextel its federal rights under the TCA and sought damages and attorneys' fees pursuant to 42 U.S.C. §1983 (Count IV).

2.  After engaging in settlement negotiations, the parties filed a proposed Agreement for Judgment, which stated, in pertinent part:

> [A] Special Permit…is issued to Nextel to replace an existing 117-foot tall antenna located at 141R Liberty Street, Hanson, Massachusetts (the "Property") with a 130-foot tall wireless personal wireless services facility <u>with the following conditions</u>:
>
> 1.  Prior to commencement of construction, Nextel shall post a bond for $25,000 for the repair or removal of the tower in the event of abandonment or non-use for a period of six months.
>
> 2.  Construction of the personal wireless services facility shall be performed in accordance with the application submitted by Nextel and the plans prepared by Turning Mill Consultants in support of Nextel's application for a special permit.
>
> 3.  Prior to commencement of any work authorized by the Special Permit, Nextel shall submit detailed drawings and calculations, stamped by a structural engineer licensed in the Commonwealth of Massachusetts showing the following:
>
>     a.  Structural integrity of the new tower and support guys to withstand windloads, with particular regard to the safety of the occupants of the site and abutting properties, including a statement of measures to be employed to ensure that the facility will not fall onto abutting properties.
>
>     b.  Structural examination of the existing building and foundation design of the proposed tower, in view of the condition of the existing building.

  4.  The personal wireless services facility shall accommodate co-location by another personal wireless service provider.

  5.  Prior to construction of the personal wireless services facility, Nextel shall expend up to $2,000 to cleanup the Property, including performing the removal of debris, unused autos and auto parts.

See Appendix to Plaintiff's Statement of Undisputed Fact Pursuant to Local Rule 56.1 (hereinafter referred to as "Appendix"), Exhibit A-A.

 3. The Court approved the Agreement for Judgment and entered it as an Order of the Court on April 19, 2001. See Appendix, Exhibit A-A.

 4. "Following this Court's issuance of the Order on or about April 19, 2001, Nextel decided to delay deployment of the subject facility." See Nextel v. Town of Hanson, Civil Action No. 00-11417-DPW, Motion To Enforce Consent Decree And For Finding Of Contempt, Affidavit of Rossana Ferrante, ¶7. The self-inflicted delay lasted almost two years.

 5. On February 24, 2003, a Nextel representative requested a building permit for the personal wireless services facility. See Appendix, Exhibit B-K. Mr. Kennedy, the Building Inspector, advised the Nextel representative that it had failed to apply for and obtain Site Plan Approval as required by the Hanson Zoning Bylaws before a building permit could be granted. Id.; see also, Response to Plaintiff's Local Rule 56.1 Statement Undisputed Facts, ¶5.

 6. Nextel's attorney contacted Town Counsel and threatened to file a Motion for Contempt of the Agreement for Judgment if Nextel were required to undergo Site Plan Review, arguing that it did not want to create an opportunity for an abutter to appeal Site Plan approval and that one of the conditions of the Special Permit required that construction be performed according to specific plans, eliminating the need for Site Plan Review.

7. To avoid unnecessary litigation, the Board of Appeals voted to waive Site Plan Review on the grounds that it had reviewed the proposed plans in the context of the special permit application and that the Agreement for Judgment bound the construction to specific plans. See Appendix, Exhibit B-K, ¶4.

8. On April 1, 2003, the Nextel representative returned to the Building Inspector and filed an application for a building permit with supporting materials. See Appendix, Exhibit B-K, ¶5. At that point, the Building Inspector accepted the building permit application and reviewed it. See Appendix, Exhibit B-K, ¶5-6.[1]

9. The Building Inspector visited the Property and spoke to the occupant, who showed the Building Inspector that the roof was leaking in certain spots. See Appendix, Exhibit B-K, ¶6. The Building Inspector also noted that the proposed antenna would be moving ten feet closer to one of the abutting properties rather than replacing the existing antenna in its current location on the roof. Id. The Property's occupant showed the Building Inspector a guy wire that had been hit by a piece of equipment and had snapped back to the existing antenna. Id.

10. The Building Inspector determined that there are two transformers mounted on a utility pole approximately seventy-five feet from the structure according to the plans provided by Nextel. See Appendix, Exhibit B-K, ¶13. If the transformers were disrupted by the antenna, Liberty Street (Route 58) would be affected, including residential and commercial properties. Id.

11. The Building Inspector also determined that on one side of the structure on the Property is an auto body shop attached to a residential dwelling. Id. The distance between the

---

[1] The plans submitted to the Building Inspector appear in the Appendix at Exhibit B-B. They consist of eight sheets, including the Title Sheet (T-1), Compound (& Tower) Setbacks (C-1), Enlarged Site Plan and East Tower Elevation (A-1), Construction Details (A-2), Construction Details (A-3), Electrical Details (E-1), Grounding Details (E-2), and Structural Details (S-1).

antenna and that lot line is only twenty-eight feet. Id. According to the plans provided by Nextel, the antenna is only one hundred feet from the residential dwelling itself. Id.

12. The Building Inspector observed that on the other side of the structure, there is only ninety-seven feet to the lot line of another residential abutter, Mary F. Wolfe. Id. The Nextel plans do not denote the actual location of her dwelling. Id. As the Hanson Zoning Bylaws permit her dwelling to be twenty feet from her side lot line, he realized that it could be as close as one hundred seventeen feet from the antenna. Id. The Building Inspector also found that in contrast to the side setbacks, the distance from the antenna to the rear lot line is approximately eight hundred two feet. Id.

13. The Building Inspector questioned one of Nextel's agents regarding the condition of the roof and inquired as to what repairs Nextel intended to make. See Appendix, Exhibit B-K, ¶8. Nextel's agent responded that Nextel would repair the roof in the immediate area of the antenna, but would not repair any other part of the roof, as that was the property owner's responsibility. Id.

14. After consulting with a technical advisor at the Massachusetts Board of Building Regulations and Standards, as well as twelve other local building officials attending a regional meeting of the Southeastern Massachusetts Building Officials Association ("SEMBOA"), the Building Inspector determined that the application violated 780 CMR 3109.1, which states, in pertinent part:

> The installation of any antennal structure mounted on the roof of a building shall not be erected nearer to the lot line than the total height of the antennal structure above the roof, nor shall such structure be erected near electric power lines or encroach upon any street or other public space.

15. The Building Inspector advised the Nextel representative of the problem immediately and issued a written decision on April 22, 2003.[2] See Appendix, Exhibit B-G; Appendix, Exhibit B-K, ¶9.

16. The purpose of the setbacks in 780 CMR 3109.1 is the protection of public safety. See Appendix, Exhibit B-K, ¶12; Appendix, Exhibit B-L, ¶3.

17. If the integrity of an antenna were compromised or if it were to collapse onto a neighboring building, street or other public area, abutters, vehicles, pedestrian passersby and the general public would be put in danger. Id. If an antenna became tangled in or severed a utility wire, the community outside the immediate neighborhood may be affected. Id. In addition, people in the immediate vicinity may be jeopardized by a live cut wire. Id. The setbacks in 780 CMR 3109.1 minimize these risks by placing a buffer between an antenna and the people and utilities it could jeopardize. Id.

18. The collapse of a larger antenna has a greater potential to damage neighboring buildings (and creating a danger to those inside them), to fall across a street or public space, or to disrupt a utility wire, merely due to its size. See Appendix, Exhibit B-K, ¶14; Appendix, Exhibit B-L, ¶4.

19. Nextel filed an appeal from the redetermination of the Building Inspector with the State Building Code Appeals Board ("BCAB"). See Appendix, Exhibit A.[3] The BCAB held a hearing on Nextel's appeal on September 11, 2003 and took the matter under advisement.

20. On November 6, 2003, the BCAB reconvened in a deliberative session. See Exhibit 1, Decision of the BCAB.

---

[2] Pursuant to 780 CMR 111.1, the Building Inspector is required to issue a decision in writing within thirty (30) days of the filing of an application for a building permit.

[3] The plans enclosed in Exhibit A-B are not the plans submitted to the Building Inspector in 2003, but instead appear to be the 1999 plans submitted to the Zoning Board of Appeals.

21. On December 3, 2003, the BCAB issued a written decision upholding the determination of the Building Inspector, finding that the proposed structure was a roof-mounted "antenna" subject to 780 CMR 3109.1, rather than a radio or television tower subject to 780 CMR 3108.  Id.

                    DEFENDANTS,

                    By their attorneys,

/s/
Joel B. Bard (BBO# 029140)
Katharine Goree Doyle (BBO# 634131)
Kopelman and Paige, P.C.
 Town Counsel
31 St. James Avenue
Boston, MA 02116
(617) 556-0007

211001/HANS/0127