UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 03-12563-DPW

NEXTEL COMMUNICATIONS,

    Plaintiff,

v.

TOWN OF HANSON, ET AL.,

    Defendants.

**STATE DEFENDANT'S OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This Court should deny plaintiff's Motion because: (1) Nextel's state law claims against the Massachusetts State Building Code Appeals Boards ("Board") are barred by the Eleventh Amendment; (2) even if this Court were to conclude that the Eleventh Amendment is not a bar, the Court should certify the state law question, which raises an issue of first impression, to the Massachusetts Supreme Judicial Court; (3) even if this Court were to reach the state law issue, the Board correctly concluded as a matter of state law that the state building code regulation pertaining to the danger posed by collapsing antennas applied to the building permit at issue; and (4) the Board's decision is supported by substantial evidence in the written record indicating that the roof-mounted tower structure is intended to include antennas and is therefore not just a tower.

**OVERVIEW OF THE STATE BUILDING CODE**

The Massachusetts Building Code ("Code") is codified at 780 C.M.R. §§ 1.00 et seq. The Code states that its "technical content is based on the 1993 edition of the Building Officials

and Code Administrators (BOCA) National Building Code." 780 C.M.R., Foreword and Acknowledgments. (Copy attached hereto as Ex. A)

The Code expressly states that it "shall be construed to secure its expressed intent, which is to insure public safety, health and welfare insofar as they are affected by building construction . . . ; and in general, to secure safety to life and property from all hazards incident to the design, construction, reconstruction, alteration, . . . [or] use . . . of buildings, structures or premises." 780 Code. Mass. Regs. § 101.4 (italics omitted). (Copy attached hereto as Ex. B)

Chapter 31 of the Code addresses "Special Construction" and states that "[i]n addition to the general requirements of 780 CMR governing the design and construction of all structures, the provisions of 780 CMR 31 shall control the special structures and construction features as herein provided." 780 C.M.R. § 3101.1. Chapter 31 includes the regulations governing Radio and Television Towers (Section 3108) and Radio and Television Antennas (Section 3109). Neither sections 3108 or 3109, or any other section of the Code for that matter, define what constitutes a "tower" or an "antenna." (Copies of both sections attached hereto as Ex. C)

Section 3108.1 states generally that "[s]ubject to the structural provisions of [the code] for wind loads and the requirements of [the code] governing the fireresistance ratings of buildings for the support of roof structures, all radio and television towers shall be designed and constructed as herein provided." (italics omitted). The remaining subsections of section 3108 set forth requirements for tower "Location and access" (section 3108.2); "Construction" (section 3108.3); "Loads" (section 3108.4); and "Grounding" (section 3108.5).

Section 3109 addresses "Radio and Television Antennas." Section 3109.1 states:

**Permits not required**: A building permit is not required for roof installation of

-2-

> antennal structures not more than 12 feet . . . in height for private radio or television reception. Such a structure shall not be erected so as to injure the roof covering, and when removed from the roof, the roof covering shall be repaired to maintain weather and water tightness. The installation of any antennal structure mounted on the roof of a building shall not be erected nearer to the lot line than the total height of the antennal structure above the roof, nor shall such structure be erected near electric power lines or encroach upon any street or other public space.

(italics omitted). Section 3109.2 provides:

> **Permits required**: Approval shall be secured for all roof-mounted antennal structures more than 12 feet . . . in height above the roof. The application shall be accompanied by detailed drawing of the structure and methods of anchorage. All connections to the roof structure shall be properly flashed to maintain water tightness. The design and materials of construction shall comply with the requirements of [Section] 3108.3 for character, quality and minimum dimension.

Section 3109.3 governs "Dish antennas," and sets forth specific requirements for those types of structures.

## ARGUMENT

**I.     NEXTEL'S CLAIM AGAINST THE BOARD IS BARRED BY THE ELEVENTH AMENDMENT.**

Nextel's claim that the Board misinterpreted the Code (Compl. at 8) is barred by the Eleventh Amendment, which immunizes state agencies from state claims in federal court. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 117 (1984). Moreover, the provision of the Federal Telecommunications Act of 1996 ("TCA") at issue here, 42 U.S.C. § 332(c)(7)(B)(iii), does not validly abrogate the Commonwealth's Eleventh Amendment Immunity, see MCI Telecommunications Corp. v. Bell Atlantic Pennsylvania, 271 F.3d 491, 503 (3rd Cir. 2001), cert. denied 537 U.S. 941 (2002) (noting that a somewhat similar provision in section 252(e)(6) does not constitute a valid abrogation in light of Seminole and its progeny), nor has the Commonwealth voluntarily waived its immunity; nor is this an Ex Parte Young action

like the one held to be viable in <u>Verizon Maryland Inc. v. Public Serv. Comm'n of Maryland</u>, 535 U.S. 635, 645-48 (2002). Accordingly, judgment should enter for the State Defendants.

**II.    EVEN IF THIS COURT WERE TO REACH THE STATE LAW ISSUE, IT SHOULD CERTIFY TO THE SUPREME JUDICIAL COURT THE QUESTION OF WHETHER THE BOARD CORRECTLY INTERPRETED THE REGULATIONS AT ISSUE, WHICH RAISES AN IMPORTANT ISSUE OF FIRST IMPRESSION.**

Given that this Court is now reviewing a state agency's interpretation of state law raising an issue of first impression under state law, principles of cooperative federalism strongly suggest that this Court should certify to the Massachusetts Supreme Judicial Court, under S.J.C. Rule 1:03, 382 Mass. 698, 700 (1981), the question whether the Board correctly interpreted sections 3108 and 3109 of the Code given that facts before the Board. This case raises an important issue of first impression under the Code. The proper construction of sections 3108 and 3109 have not yet been addressed by a Massachusetts appellate court.

The First Circuit has stated that when a court is faced with a question of first impression regarding the proper construction of a state law provision in a nonhypothetical situation that may have prospective importance to state policy, a federal court should certify the question to the Supreme Judicial Court. <u>Pyle v. South Hadley Sch. Comm.</u>, 55 F.3d 20, 22 (1st Cir. 1995). This approach has also been followed by at least one other judge in this District in the context of interpreting state regulations. See <u>Knapp Shoes, Inc. v. Sylvania Shoe Manfg. Corp.</u>, 418 Mass. 737 (1994) (District Court certified question to Supreme Judicial Court regarding the proper interpretation of regulations under Mass. G.L. c. 93A). Accordingly, this Court should certify to the Supreme Judicial Court the question whether the Board correctly interpreted the Code given the facts before the Board.

III. **EVEN IF THIS COURT WERE TO REACH THE MERITS OF THE STATE LAW ISSUE, THE BOARD CORRECTLY INTERPRETED AS A MATTER OF STATE LAW THE APPLICABILITY OF THE STATE BUILDING CODE REGULATIONS TO THE ROOF-MOUNTED ANTENNAL STRUCTURE AT ISSUE IN THIS ACTION.**

The Board correctly applied the Code to the structure at issue. The Code expressly states that it "shall be construed to secure its expressed intent, which is to insure public safety, health and welfare insofar as they are affected by building construction . . . ; and in general, to secure safety to life and property from all hazards incident to the design, construction, reconstruction, alteration, . . . [or] use . . . of buildings, structures or premises." 780 Code. Mass. Regs. § 101.4 (italics omitted). Hence, when interpreting the Code, its provisions should be construed to promote the Commonwealth's important interest in ensuring public safety.

Here the Board was faced with a structure that would be, as the record indicates, roof-mounted and involving antennal structures. (See infra Argument.IV) As a threshold matter, it was reasonable for the Board to conclude that the third sentence of section 3109.1 applied to the structure at issue, given the breadth of the sentence's language. "The installation of any antennal structure mounted on the roof a building shall not be erected nearer to the lot line than the total height of the antennal structure above the roof, nor shall such structure be erected near electric power lines or encroach upon any street or other public space." Section 3109.1, 3rd sent. (emphasis added). Not only does the Building Code use the word "any," which requires a broad construction, it also uses the phrase "antennal structure," also a broad phrase, instead of the narrower terms "antenna" or "structure." The intended breadth of the sentence is plain, given the language used. The narrow construction advanced by Nextel is inconsistent with the broad language of the sentence.

The broad language of the first clause of the sentence is also consistent with and sensible given the concern stated in the second clause of the sentence "structures . . . erected near electric power lines or encroach[ing] upon any street or other pubic space." Section 3109.1, 3rd sent. A plain public-safety threat, which the Code is intended to avoid (see section 104.4), could be posed by the collapsing or toppling of such a roof-mounted antennal structure.[1] Hence, it would be inconsistent with the text of the Code to give the third sentence of section 3109.1 the narrow interpretation advanced by Nextel.

Moreover, there is no merit to Nextel's contention that section 3109.1 is inapplicable because the first and second sentences of the section address antennal structures that are not more than 12 feet in height. (Nextel's Memo. at 3.) Nextel's contention is directly undermined by the Commentary to the BOCA National Building Code at 31-27 (appended to the Board's decision as Attachment C), which expressly contemplates that the third sentence of section 3109.1 is intended to apply to antennal structures which are more than 12 in height above the roof.[2]

Nor is there merit to Nextel's contention that labeling the structure a tower automatically

---

[1] In fact, the written record here indicates that the proposed structure would be within collapsing distance of a electric power pole supporting a transformer. (See Board's Decision, Attachment A.)

[2] The commentary provides:

To prevent damage to adjacent structures should the antenna collapse, antennas are not to be erected closer to the lot line than the height of the antenna. Therefore, if the antenna is 20 feet in height, the location of the antenna must be at least 20 feet from the nearest lot line. Adequate clearance is to be maintained between the antenna and the adjacent power lines, and the antenna cannot be an obstruction in a street or public space.

(emphasis added).

exempts it from the requirements of section 3109. (Nextel's Memo. at 9). The text of the Building Code does not support the premise--advanced by Nextel–that a structure like the one here may not be subject to both sections 3108 and 3109. In fact, the text of the last sentence of section 3109.2 supports a different conclusion altogether. That sentence provides that antennal structures over 12 feet high "shall comply with the requirements of [the section of the Code governing the construction or radio and television towers] for character, quality and minimum dimensions." Thus, the Building Code contemplates that some structures may be both "antennal structures" and "towers."

This view is supported by the only Massachusetts case touching on the issue. In Wilson v. Soucy, Civil Action No. 00-825-C (Mass. Superior Court, July 3, 2001)(Agnes, J.) (copy attached hereto as Ex.D), a Justice of the Massachusetts Superior Court addressed whether a "so called cell tower should be regarded a 'radio antenna'" under a local zoning by-law. 2001 WL 810154, *5. Beginning its analysis under state law the court noted that the term "radio antenna" was "not further defined in the by-law, or in state law." Id. Consequently, the court noted that it "must give the words of the zoning law their common and approved meaning just as it is required to do in the construction of [state] statutes." Id. (citing Mass. G.L. c. 4, § 6 and Pellegrini v. City Council of Springfield, 22 Mass. App. Ct. 459, 464-65 (1986).

Following this approach the court looked to modern dictionary definitions of "antenna" and "radio" and considered these "definition[s] in the light of the lexicon of modern wireless telecommunications technologies" and concluded that "the term 'radio antenna' includes such monopole structures used in wireless communication technologies." Id. at *6. In reaching this conclusion, the court distinguished Building Commissioner of Franklin v. Dispatch

Communications, 48 Mass. App. Ct. 709 (2000) and Carney v. Richmond, 139 N.H. 21 (1994), where courts had looked at similar language in local zoning bylaws, but where the bylaw language had, unlike in Wilson, been adopted well before the modern cable television/wireless telecommunication era. Wilson, 2001 WL 810154 *6 & n.6.

## IV.  SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S DECISION.

The TCA provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

Nextel contends that the written record supports only the conclusion that the structure is a "tower" and not an "antenna" for purposes of the Code. (Nextel's Memo. at 8-10.) A close reading of the written record, however, reveals substantial evidence–derived from Nextel's own submissions–that show that the structure was in part a tower and in part an antennal structure, and that most significantly the structure was intended to be mounted on a roof and not free-standing.

Evidence in the written record supporting the Board's conclusion appears as follows:

- The Nextel Project Summary (T-1) indicates that the project will include a tower to replace a tower on a roof and "Nextel antenna array to go at 130' A.G.I., three sectors to be covered by 12 antennas."

- The Nextel Project Summary (A-1) discusses and describes "typical antenna" and notes that "all antennas to be furnished with downtilt brackets." The summary also discusses "Antenna Orientation" and the "Nextel antenna array."

- The Nextel Project Summary (A-2) discusses extensively the various antennas to be attached to the tower.

- The Geotechnical Engineering Report submitted by CGE Engineering, Incorporated, in support of Nextel's proposal repeatedly describes the project as relating to a "roof-mounted communication tower."

- The report prepared by Rohn Industries, Incorporated, in support of Nextel's proposal describes a tower that will be mounted on a roof. (See Plan View N.T.S.) The report also describes various antennas that will be attached to the tower. Additionally, under its "general notes" for the project Rohn notes that the tower will include "antennas" (note 3) and that the "work shall be in accordance with ansi/TIA/EIA-222-F, structural standards for steel antenna towers and antenna supporting structures."

- The Structural Analysis Summary of the Rohn report also notes that the tower is to be mounted by "roof installation." Additionally, the "Elevation View" of the Rohn report also states that the "[t]ower base connections to roof are to be suppled by others."

- The FAA Aeronautical study submitted in support of Nextel's proposal describes the structure as an "antenna tower."

Accordingly, the written record supports the Board's written decision[3] that the structure was not simply a "tower" governed by section 3108, but rather an "antennal structure mounted on the roof of a building" within the scope of section 3109.

---

[3] That the Board candidly described in its written decision its struggle with the question of whether the structure was a tower or an antenna for purposes of the building code should not detract–as Nextel contends (Nextel's Memo. at 9) from the reasonable conclusion reached by the Board.

## **CONCLUSION**

For the reasons set forth above this Court should deny Nextel's Motion for Summary Judgment and enter judgment for the State Defendant.

>                    Respectfully submitted,
>
>                    THOMAS F. REILLY
>                    ATTORNEY GENERAL
>
>
>                    _____/s/_____
>                    John R. Hitt (BBO # 567235)
>                    Assistant Attorney General
>                    Government Bureau
>                    One Ashburton Place, Room 2019
>                    Boston, MA  02108
>                    (617) 727-2200, ext. 2995

DATED: January 23, 2004

---

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/or email on January 23, 2004.

_____/s/_____
John R. Hitt, AAG