Case 1:03-cv-12563-DPW   Document 17-5   Filed 01/23/2004   Page 1 of 6   Ex. D

2001 WL 810154, Wilson ex rel. White Street Auto Body Realty Trust v. Soucy, (Mass.Super. 2001)   Page 1

*810154    Superior Court of Massachusetts.

**Sandra WILSON and Richard Greenwood,
Individually and as
Trustees of WHITE STREET AUTO BODY
REALTY TRUST, Plaintiffs,
v.
John SOUCY, Joseph Ryan, Rose Ryan, and
Zoning Board of
Appeals for the Town of Groveland, Defendants.**

No. 00-825-C.

July 3, 2001.

MEMORANDUM OF DECISION AND ORDER

AGNES.

**1 This is an appeal by the plaintiffs pursuant to G.L. c. 40A, § 17, from a decision of the Zoning Board of Appeals of the Town of Groveland granting a special permit for the construction of a monopole communication tower to be constructed on land owned by the defendants, Joseph Ryan and Rose Ryan, in Groveland.

BACKGROUND

Based on a stipulation of facts submitted by the parties and the credible evidence offered at trial, I make the following findings of fact.

The defendants Joseph and Rose Ryan own a lot of land on a private way known as Nelson Street in Groveland, Mass. (FN1) The land is in an Industrial District under the Zoning Bylaw of the Town of Groveland. See exhibit 9, section 901. The road leading up to their lot is unpaved and the grade is steep. It will be necessary to remove some, though not all, of the trees on the lot to erect the tower. This lot is rectangular in shape has a total area of 14,400 square feet with frontage of 120 feet and depth of 120 feet. The plaintiff, Sandra Wilson, resides at 3 Nelson Road on several lots located about 800 feet north of the Ryans' property. She owns a home, a garage, an in-ground pool and a storage shed. See exhibit 15-16. Nelson street turns from pavement, to gravel and ends in brush beyond her property. There is some flooding in the springtime. See exhibits 17-20. Her property has an appraised value of about $180,000. She uses wells for irrigation. The plaintiff, Richard Greenwood, conducts an auto repair business on property he owns at the very end of Nelson Road near its intersection with Salem Street and several hundred feet further north of the Ryans' property. The road in question serves on the two plaintiffs and one other family.

On February 26, 2000, the defendants John Soucy and Joseph Ryan filed an application for a special permit with the defendant Zoning Board of Appeals of the Town of Groveland to construct a monopole communication tower for the "reception and relay of communication signals within the frequencies designated by the FCC." The installation, which does not involve the storage or use of any chemicals or hazardous substances, is designed to operate 24 hours a day without any employees or attendants. It will be necessary to service the installation on a periodic basis, but off street parking will be provided for the service personnel.

A hearing was conducted on April 5, 2000 on the defendants application. The minutes of that hearing were received in evidence at the trial in this case. There were no concerns or objections expressed on aesthetic grounds. The plaintiff, Richard Greenwood, expressed concerns about the traffic impact of the proposal. Defendant John Soucy explained that the area was not zoned for residential use, and that after the 2-3 week construction period for the tower, the only traffic would be the one vehicle that would drive by for an inspection every two weeks. He also indicated that the site would be fenced in, monitored by security cameras, and illuminated by minimal security lighting. There was evidence offered by the defendants which I credit indicating that the tower would be approximately 120 feet high, made of steel, and affixed to a concrete base that will be bolted into the ledge. The determination of how to attach the tower was made by a qualified and experienced civil engineer who designs and builds such towers and who has designed over 100 such installations. I credit his testimony. The concrete foundation is capable of withstanding ice, rain and wind storms in accordance with national code requirements. The construction will ensure that the tower can withstand hurricane force winds of up to 90 m.p.h. which would be strong enough to tear roofs off of houses and which occur in the area only about once every fifty years. Moreover, the tower can be designed so that the weakest portion of it will be in the middle so that if it does succumb to an extremely high wind it will break in the middle as if it were hinged. The tower design also involves testing of the soil in the vicinity in order to install an appropriate grounding grid to send lightning into the ground and to dissipate any static electricity. The tower depicted in exhibit 6 matches the design sought by the defendants and the type of tower that their engineer has designed in the past. Once properly tested and constructed, the tower will have no effect on the plaintiffs' property in terms of the impact of lightning.

© 2003 West, a Thomson business. No claim to original U.S. Govt. works.

**\*\*2** The tower is designed to broadcast and receive radio waves that are part of the electromagnetic spectrum. It does not emit any fumes, makes no noise, and produces no dust. Radio towers can be designed so that the entire structure is involved in the transmission of radio waves (typically AM frequency radio antennas) or so that the transmitting device is affixed to the tower (typically FM frequency radio antennas).

There are two other cell phone towers in the area. One, the so-called "Kelly" tower is about 1500-1600 feet away from the site of the defendants' proposed tower and about the same height as the one that the defendants wish to erect. Another tower, the so-called "Burroughs" tower is actually closer to the plaintiffs' property than the tower that the defendants wish to erect. See exhibits 6, 7, and 8 (photographs of the other towers in the vicinity). The tower proposed by the defendants is about 900 feet from the home on the property of plaintiff Wilson and about 980 feet from the home on the property of plaintiff Greenwood. These distances were the result of calculations made by the defendants to ensure that the towers were approximately equally spaced from one and another. Furthermore, the proposed tower will be below the tree line as seen from the plaintiff Wilson's property.

There is insufficient data upon which to evaluate the effect, if any, of cell tower construction on property values in the area in question. There is some evidence that cell towers have no appreciable effect on property values in the area of Lynn, Massachusetts, and this is the opinion of an experienced local real estate appraiser who talked to area residents and opined that the property values in the area turn primarily on what can be built on the lot.

The Board voted 4-0 to grant a special permit to erect a 120 foot mono-pole subject to ten stipulations. These include a requirement (1) that a gate be installed on the road to the tower and that a "no trespassing" sign be erected; (2) that an 8 foot high fence be erected around the tower with 2 feet of barb wire above it; (3) that steps be installed on the tower that cannot be reached without a ladder and that the first twenty-feet of steps be removable; (4) that security cameras be installed; (5) that the applicants construct a 10-12 foot wide road to the site to facilitate the construction and maintenance of the tower; (6) that requests for additional to use the tower would have to be approved by the Board; (7) that any additional water coming from the tower would have to be diverted away from Nelson road by use of drainage pipes or a culvert pipe; (8) that dim lighting be installed away from residential areas for security purposes; (9) that the permit is subject to recall based on complaints received by the Zoning Enforcement Officer or the Board; and (10) that no storage or other buildings be erected as part of the permit. Exhibit 12.

## DISCUSSION

*1. Standard of judicial review.* When a request for a special permit pursuant to G.L. c. 40A, § 9 and provisions of a local zoning law is denied, an aggrieved party may seek judicial review. G.L. c. 40A, § 17. In such a case, "the court shall hear all evidence pertinent to the authority of the board or permit granting authority and determine the facts, and upon the facts as so determined, annul such decision if found to exceed the authority of the board or such permit granting authority or make such other decree as justice and equity may require." G.L. c. 40A, § 17.

**\*\*3** "On appeal to the Superior Court or Land Court, a judge determines the legal validity of a zoning board decision on the facts found by him; he gives no evidentiary weight to the board's findings. Judicial review is nevertheless circumscribed: the decision of the board 'cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.' "

*Roberts v. Southwestern Bell Mobile Systems, Inc.,* 429 Mass. 478, 485-86 (1999) (citations and quotations omitted). The hearing before the court is de novo, and the court is not restricted to evidence that was presented to the board. *Bicknell Realty Company v. Board of Appeal of Boston,* 330 Mass. 676, 679 (1953).

A trial judge acting under G.L. c. 40A, § 17 does not possess the same measure of discretionary authority as the board enjoys when it considers the application for a special permit under G.L. c. 40A, § 9 and its local zoning law. *Gulf Oil Corp. v. Board of Appeals of Framingham,* 355 Mass. 275, 277 (1969). Thus, there will be circumstances when a zoning board of appeals may deny an application for a special permit on the basis of evidence that also would allow the board to grant the special permit. *Zaltman v. Board of Appeals of Stoneham,* 357 Mass. 482, 484 (1970). In such cases, the decision by the board must be respected, and it will be upheld by the courts in a proceeding under § 17. See *Burnham v. Board of Appeals of Gloucester,* 333 Mass. 114, 120 (1955) (court may not substitute its judgment for that of the board). See also *Ferrante v. Board of Appeals of Northampton,* 345 Mass. 158, 161-62 (1962) ("Rarely can the court order the

© 2003 West, a Thomson business. No claim to original U.S. Govt. works.

Case 1:03-cv-12563-DPW    Document 17-5    Filed 01/23/2004    Page 3 of 6

2001 WL 810154, Wilson ex rel. White Street Auto Body Realty Trust v. Soucy, (Mass.Super. 2001)    Page 3

granting of a variance when the board has denied the petition ....[but][c]onceivably a decision of a board might be held to be arbitrary when ... the board failed to make any findings to support its exercise of discretion in denying the variance"). A reviewing court should respect the decision made by a local board because it "brings to the matter an intimate understanding of the immediate circumstances of local conditions, and of the background and purposes of the entire by-law ..." *Berkshire Power development, Inc. v. Zoning Board of Appeals of Agawam,* 43 Mass.App.Ct. 828, 832 (1997). Thus, a local zoning board's decision is entitled to "all rational presumptions in favor of its interpretation of its own by-law, [provided] there [is] a rational relation between its decision, and the purpose of the regulations it is charged with enforcing." *Fafard v. Conservation Co'mm of Reading,* 41 Mass.App.Ct. 565, 572 (1996).

However, the discretion enjoyed by a board acting under G.L. c. 40A, § 9 is not unlimited. *MacGibbon v. Board of Appeals of Duxbury,* 356 Mass. 635, 638 (1970). Discretion, in this context, does not mean that the court should simply defer to the determination made by the board without an independent determination of the facts. *Devine v. Zoning Board of Appeals of Lynn,* 332 Mass. 319, 322 (1955)(court cannot simply adopt the findings of the board under G.L. c. 40A, § 17). Discretion, in this context, means that there was sufficient evidence before the board to authorize it to grant or to deny a special permit, and that the board's decision was within the range of permissible choices. A broader understanding of administrative discretion than this would be tantamount to declaring that the board could act arbitrarily. *See Josephs v. Board of Appeals of Brookline,* 362 Mass. 290, 295 (1972). (FN2)

**\*4** When a person challenges the action of a zoning board of appeals in denying an application for a special permit on grounds that the board's decision lacks a sufficient evidentiary foundation, the role of the trial court is to assess, after an independent determination of the facts, whether the board's reasons have a substantial basis in fact, or are merely a pretext for arbitrary action or a cover for reasons that are not related to the purposes of the zoning law. *See Vazza Properties, Inc. v. City Council of Woburn,* 1 Mass.App.Ct. 308, 312 (1973).

*2. The Town of Groveland Zoning Law.* Under the Town of Groveland zoning law, the Zoning Board of Appeals (hereafter, "ZBA") is the Special Permit granting authority for land uses within an Industrial District. Exhibit 9, section 901 at 37. The parties agree that the land in question is situated in an Industrial District under the applicable zoning law. Under section 901 of the zoning law, "no building or land shall be used for any purpose that is injurious, noxious, or offensive to the neighborhood, by reason of ... [any] cause, existing or potential or for any purpose except the following, and then only by special permit from the zoning board of appeals after a public hearing." Exhibit 9 at 37. Said section 901 further authorizes the ZBA "to set conditions and restrictions" on the issuance of a Special Permit. Exhibit 9 at 37. In subsequent sections of the zoning law applicable to Industrial District Uses, the town's by-law requires the issuance of a Special Permit for a use that is permitted in a business or residential district, exhibit 9, section 901.1, as well as for any industrial, manufacturing or business use that is to be relocated or expanded within an Industrial District. Exhibit 9, sections 902 & 903.

With respect to these various uses that require a Special Permit, the town's by-law also contains a series of restrictions including set back requirements, exhibit 9, section 905 & 907, parking space requirements, exhibit 9, section 908, and limitations on the amount of space that may be paved. Exhibit 9, section 909. The local by-law also contains a height restriction that reads as follows: "Height of the structures/buildings shall not exceed 35 feet. This limit does not apply to radio antennas." Exhibit 9, section 906. This must be read in light of the local by-law's definition of the term "Structure." This term is defined as "[a]nything constructed or erected, the use of which requires a fixed location on the ground, or attachment to something located on the ground, including buildings, mobile homes, billboards, tanks, or the like, or the parts thereof, and swimming pools capable of having a depth of two (2) feet or more at any point and a surface area of more than one-hundred (100) square feet. However, this definition does not include a boundary wall or fence less than six (6) feet in height above the mean finished grade of the adjoining ground." Exhibit 9, Appendix B Definitions at 78.

**\*5** *3. A Special Permit versus a variance.* There is an important distinction between a variance and a special permit. "Special permits govern that class of uses that lie between those that are prohibited and those that, because they comply with the zoning code in all detail, are allowed as of right. *See* Bobrowski, Massachusetts Land Use and Planning Law § 9.1, at 342 (1993)." *Duteau v. Zoning Board of Appeals of Webster,* 47 Mass.App.Ct. 664, 667-68 (1999). "[T]he special permit power presupposes the allowance of certain uses, but only with the sanction of the local permit granting authority acting in accordance with the

2001 WL 810154, Wilson ex rel. White Street Auto Body Realty Trust v. Soucy, (Mass.Super. 2001) **Page 4**

Case 1:03-cv-12563-DPW   Document 17-5   Filed 01/23/2004   Page 4 of 6

fairly flexible criterion of 'harmony with the general purpose and intent of the ordinance or by law.' " *Mendes v. Board of Appeals of Barnstable,* 28 Mass.App.Ct. 527, 531 (1990), quoting G.L. c. 40A, § 9. *Accord, Building Commissioner of Franklin v. Disp. Comm., N.E.,* 48 Mass.App.Ct. 709, 716 (2000) (A special permit cannot make a structure or use that violates the zoning law legal). The burden of proof rests on the party who seeks the special permit. *Dowd v. Board of Appeals of Dover,* 5 Mass.App.Ct. 148, 154-55 (1977).

A variance, on the other hand, "presupposes the prohibition of the use sought and operate[s] as a safety valve to relieve an owner of real estate from the hardship of compliance with a zoning regulation resulting from particular physical characteristics that burden the real estate." *Mendes, supra,* 28 Mass.App.Ct. at 531.

Thus, in order to assess the validity of the ZBA's decision in this case, it must first be determined whether a monopole communications tower may be authorized in an Industrial District by a Special Permit under the Town of Groveland zoning by-law. If not, the ZBA lacked authority to grant a special permit.

4. *Authority of ZBA to issue a special permit under Section 905 of the zoning by-law.* The ZBA decision in this case is premised on an interpretation of section 905 of the by-law that places a monopole communications tower within the definition of a "radio antenna." The issue is not whether a radio antenna or a communications tower is a "structure" as that term is defined in Appendix B of the zoning by-law. See exhibit 9, Appendix B at 78. The definition of "structure" as "[a]nything constructed or erected, the use of which requires a fixed location on the ground ...." is certainly broad enough to include a radio antenna or a communications tower. *See also Globe Newspaper Co. v. Beacon Hill Architectural Association,* 421 Mass. 570, 574 (1996) (discussing the definition of the term 'structure" under the State Building Code which includes "a combination of materials at a fixed location ... [including a] mast for radio antenna").

The plaintiffs' argument is first that by definition a 120 foot tower that is affixed to the ground and to which transmitters are affixed is a prohibited structure and not a radio antenna. Plaintiff's memorandum of Law at 2-3. The defendants, on the other hand, suggest that the common and approved usages of words should control the meaning of the words used in the zoning law, and that this approach leads to the conclusion that a so-called cell tower should be regarded as a "radio antenna" within the meaning of the local by-law. It is important to note at the outset that the term "radio antenna" is not further defined in the by-law, or in state law. (FN3) In such a case, this court must give the words of the zoning law their common and approved meaning just as it is required to do in the construction of statutes. See G.L. c. 4, § 6. *See also Pellegrino v. City Council of Springfield,* 22 Mass.App.Ct. 459, 464-65 (1986).

**\*\*6** This principle of construction encourages consideration of dictionary definitions. According to the New Webster's Dictionary and Thesaurus of the English Language 38 (Lexicon Pub.1992), an "antenna" is defined as "a device for converting electrical currents into electromagnetic waves, or vice versa. Size and shape are determined by the wavelength of the radiation and by directional requirements." The term "radio" in this context does not limit the definition in any significant way. For example, a standard definition of the term "radio" is "the transmission and reception of electromagnetic waves." *Id.* at 824. "Radio" has a commonly understood meaning that includes oral or voice communications of both a personal and commercial nature. See G.L. c. 4, § 6. The term "radio" also is used in the context of modern telecommunications technologies in a way that suggests that the term "radio antenna" should receive a broader interpretation than simply a device to send or receive commercial AM or FM radio waves. *See Roberts v. Southwestern Bell Mobile Systems,* 429 Mass. 478, 479-80 (1999). (FN4) Applying this basic dictionary definition in the light of the lexicon of modern wireless telecommunications technologies and the common understanding of the terms to the monopole communications tower involved in this case leads to the conclusion that the term "radio antenna" includes such monopole structures used in wireless communication technologies. (FN5)

Although the meaning of a term or phrase in a zoning by-law presents a question of law for the court, *Building Commissioner of Franklin v. Disp. Comm., N.E.,* 48 Mass.App.Ct. 709, 713 (2000), there is a presumption favoring the interpretation reached by the local board. *Contrast, Building Commissioner of Franklin v. Disp. Comm., N.E.,* 48 Mass.App.Ct. 709, 716-18, rev. den. 431 Mass. 1104 (2000) (Local board was correct in concluding that a 120 foot cellular communications tower did not fall outside of a 35 foot height restriction and within an exception for "chimneys, ventilators, towers, spires or other ornamental features of buildings") (FN6).

© 2003 West, a Thomson business. No claim to original U.S. Govt. works.

2001 WL 810154, Wilson ex rel. White Street Auto Body Realty Trust v. Soucy, (Mass.Super. 2001) Page 5

Case 1:03-cv-12563-DPW    Document 17-5    Filed 01/23/2004    Page 5 of 6

The interpretation of "radio antenna" employed by the defendants also finds support in federal law. Under the federal Telecommunications Act of 1996, 47 U.S.C. §§ 151 et seq., which regulates "personal wireless services" (PWS) technology, a local zoning regulation may not "prohibit or have the effect of prohibiting" the provision of PWS services. 47 U.S.C. § 332(c)(7)(B)(i), discussed in *Roberts v. Southwestern Bell Mobile Systems,* 429 Mass. 478, 481 (1999). If the Town of Groveland zoning by-law received the interpretation urged by the plaintiffs it could have the effect of prohibiting PWS technology from operating in an optimal fashion in a particular geographic region of the Commonwealth in contravention of federal law. *See* note 3 *supra.* *See also Roberts, supra,* 429 Mass. 488-90 (Concluding that although the federal law does not preempt state zoning law, it is clear that "Congress intended to encourage the rapid deployment of new telecommunications technologies").

**\*\*7.** *5. Grounds for the issuance of a Special Permit.* The remaining question is whether the board's decision has a sufficient evidentiary foundation. As noted above, in such a case, "the role of the trial court is to assess, after an independent determination of the facts, whether the board's reasons have a substantial basis in fact, or are merely a pretext for arbitrary action or a cover for reasons that are not related to the purposes of the zoning law." *See Vazza Properties, Inc. v. City Council of Woburn,* 1 Mass.App.Ct. 308, 312 (1973).

In this case, apart from environmental risks thought possibly to be associated with radio frequency emissions, which are foreclosed by federal law, see 47 U.S.C. § 47 U.S.C. § 332(c)(7)(B)(iv), and aesthetics, which were not raised by the plaintiffs in this case, the principal concern raised by the plaintiffs is whether the Board's decision with reference to potential safety risks or the damage to the plaintiffs' property due to water run off is supported by "a substantial basis in fact."

Based on the findings made above with respect to the design and installation of the cell tower, the nature of the area in which it is to be erected, and the conditions imposed by the ZBA, the record supports the Board's decision that the installation of a monopole tower would not be "injurious, noxious or offensive to the neighborhood" within the meaning of section 901 of the local by-law. Exhibit 9 at 37.

## CONCLUSION

With reference to the requests for rulings of law submitted by the plaintiffs, the court denies numbers 8, 9, 10, 41, 43, 44, 59, 60, and 61, grants numbers 3, 52, 53, 54, 55. With respect to request number 5, the court has answered that request by declaring that the monopole tower in question is a structure, but a structure that falls within the exception for a "radio antenna." With respect to the remaining requests, the court neither expressly grants nor denies them because they are either requests for findings of fact that are covered by the court's findings of fact or are irrelevant to the issues before the court.

For the above reasons, the decision of the defendants to grant a Special Permit to the plaintiffs is AFFIRMED.

(FN1.) The lot is depicted as lot 32C on an Assessor's Plan which is in evidence as exhibit A1, and as lots 36 and 37. It also appears on a plan that was prepared in 1887, is on file in the Essex County Registry of Deeds, and which is in evidence as exhibit A2.

(FN2.) The board's discretion does include authority to make its own judgment about the seriousness of a problem so long as there is a basis for it in the evidence, and, in such a case, it is not for the court to substitute its own subjective view of how serious the problem is or may become. *Subaru of New England, Inc. v. Board of Appeals of Canton,* 8 Mass.App.Ct.. 483 (1979), *quoting Copley v. Board of Appeals of Canton,* 1 Mass.App.Ct. 821 (1973).

(FN3.) G.L. c. 40A, § 3, as amended by St.1995, c. 225 § 1, provides that a local zoning by-law may not prohibit "the construction or use of an antenna structure by a federally licensed amateur radio operator. Zoning ordinances or by-laws may reasonably regulate the location and height of such antenna structures for purposes of health, safety, or aesthetics...." This provision of state law does not affect the interpretation of the term "radio antenna" as used in the Groveland zoning by-law.

(FN4.) In *Roberts, supra,* the Supreme Judicial Court discussed the federal Telecommunications Act of 1996, 47 U.S.C. §§ 151 et seq., which regulates "personal wireless services" technology. "PWS technology sends low-power, high frequency *radio signals* among relay towers (PWS towers) and switching stations. For signals to be available throughout an area, or cell, a network of PWS towers and associated support structures must be placed in a lattice or honeycomb grid. If a tower is not present at a site mandated by the lattice arrangement, a coverage gap arises. Coverage gaps

© 2003 West, a Thomson business. No claim to original U.S. Govt. works.

2001 WL 810154, Wilson ex rel. White Street Auto Body Realty Trust v. Soucy, (Mass.Super. 2001) Page 6

Case 1:03-cv-12563-DPW   Document 17-5   Filed 01/23/2004   Page 6 of 6

prevent customers from receiving and sending signals, and when customers pass through a coverage gap their cell calls are disconnected. Such gaps not only inconvenience current customers, but may also impeded the spread of the technology by making it less useful and less attractive to potential customers." *Id.* at 480 (emphasis added)..

(FN5.) This view is consistent with the evidence that an antenna may either consist of a structure for the support of a transmitting or receiving device along with a transmitter affixed to it, or may be a tower that itself is a transmitting or receiving device.

(FN6.) One of the features of the zoning by-law of the Town of Franklin considered by the Appeals Court in *Building Comm'r, Franklin, supra,* was a definition of "building height" which provided that it did not apply to "television antennas or other parts of structures which do not enclose potentially habitable floor space." *Id.,* 48 Mass.App.Ct. at 717. The court concluded that the term "television antenna" was used in a context that meant it was intended to refer to "structures appurtenant to or ornamental to a building, and that, therefore, a free standing 120 foot tower would not be within the intended interpretation of this by law." *Id.* at 718.

This conclusion is based on an analysis that gives due deference to the interpretation followed by the local board and to the context in which the term was used in the local by-law. It does not lead to the conclusion that the term "radio antenna," as used in the Town of Groveland by-law, was not intended to apply to a monopole communications tower. Likewise, *Carney v. Richmond,* 139 N.H. 21 (1994), on which the Appeals Court relied in *Building Comm'r, Franklin, supra,* is distinguishable. In *Carney, supra,* the court was faced with a zoning ordinance that contained a thirty-five foot height restriction which excepted chimneys and **7. antennas. The town granted a permit for the erection of a 100 foot tower to support antennas for a cable television receiving facility by construing the entire structure as an antenna. The New Hampshire Supreme Court reversed the decision. It concluded that in the absence of any definition of "antenna" in the ordinance, it would be understood to refer to "the ordinary, pre-cable television receiving antenna." *Id.* at 23. The reasoning in *Carney* is inapplicable to the present case because the exception in question was inserted by the town as recently as 1990, see exhibit 9, Appendix B at 77, and, in context, should be given a broader construction.

© 2003 West, a Thomson business. No claim to original U.S. Govt. works.