UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
Nextel Communications of the Mid-Atlantic, Inc. :
d/b/a Nextel Communications
                                                 :
              Plaintiff,
                                                 :
     vs.                                                **CIVIL ACTION NO.**
                                                 :      **03-12563-DPW**
The Town of Hanson, Massachusetts and the
Massachusetts State Board of Building Regulations :
and Standards
                                                 :
              Defendants
                                                 :
Mr. and Mrs. Steven DeFrancesco,
                                                 :
              Proposed Intervenors
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NEXTEL'S REPLY MEMORANDUM OF LAW

Plaintiff Nextel Communications of the Mid-Atlantic, Inc. d/b/a Nextel Communications

("Nextel") respectfully submits the following Memorandum of Law in Reply to the Opposition

to Nextel's Motion for Summary Judgment filed by the Town of Hanson, by the State Board of

Building Code Appeals (the "State Board") and by the proposed intervenors, Mr. and Mrs.

Steven DeFrancesco.

## Introduction

Nextel and the Town of Hanson settled a prior federal lawsuit (No. 00-CV-11417-DPW)

("Hanson I") with an agreement which provided that Nextel could replace an existing antenna

tower with a new wireless antenna tower.  The agreement set forth all conditions and

prerequisites to the construction of the replacement tower and was incorporated into a judgment

of this Court.  The Town, however, then sought to renege on its agreement by refusing to issue a

building permit for the replacement tower on the basis of a State Building Code provision which it could have raised in the prior litigation but did not.

When Nextel challenged this action by the Town as a violation of the consent judgment, this Court directed Nextel to first appeal Hanson's interpretation of the Building Code to the State Board.  Nextel did so, but the State Board failed to rule on a timely basis.  After being ordered by this Court to explain its refusal to act, the State Board upheld the Town's interpretation of the provision at issue.

Nextel has filed this appeal pursuant to 47 U.S.C. § 332 (c)(7)(B)(v), which grants this Court jurisdiction to review any state or local administrative decision which denies permission to build "personal wireless services facilities" as that term is defined  by federal law.  47 U.S.C. § 332 (c)(7)(C).

Nextel now moves for summary judgment herein.  There are no genuine questions of material fact; the only issues raised by the parties are questions of law.  The Court should accordingly proceed to rule on those questions of law and issue judgment in Nextel's favor.

## Discussion

### I.     There Is No Eleventh Amendment Bar To This Court's Exercise Of Jurisdiction

The State Board, relying entirely upon Pennhurst State Sch. & Hosp. v. Handelman, 465 U.S. 89, 110, 117 (1984), argues that the Eleventh Amendment to the United States Constitution prohibits this Court from reviewing the State Board's rulings.  Pennhurst, however, involved an effort by plaintiffs to obtain a federal remedy based entirely upon the remedial provisions of a state statute; as the majority opinion described it, the case was "a federal suit against state officials on the basis of state law." 465 U.S. at 117.  That situation was quite unlike the present case, in which Nextel has invoked a specific right to federal court review under a federal statute;

has alleged that the defendants are acting in violation of a previous federal court injunction; and, has further alleged that defendants' attempt to use a provision of state law is preempted by Nextel's right to a federal remedy for what the Town of Hanson admitted was a violation of federal law.  Pennhurst thus is completely inapposite.[1]

The State Board has failed even to attempt to explain why Ex parte Young, and its progeny -- including Verizon Maryland Inc. v. Public Serv. Comm'n of Maryland, 535 U.S. 635, 645-48 (2002) -- are not controlling here.  Under the Ex parte Young doctrine, state officials are never immune from a suit which alleges an ongoing violation of federal law and which seeks only prospective relief, such as an injunction, to correct that violation.  Id.

Verizon is directly on point.  In that case, a telephone company challenged the Maryland Public Utilities Commission's determination of an issue involving interconnection fees.  The company invoked the language of 47 U.S.C. § 252 (e)(6), which allows parties aggrieved by certain state agency determinations to bring an action in federal district court.  The Supreme Court was not convinced that the state agency's determination fell within that provision, but nevertheless held that the fact that the determination by the state agency was being challenged on the basis of federal pre-emption was enough to confer federal subject matter jurisdiction.  Verizon, 535 U.S. at 642-43.

In the instant case, Nextel's complaint alleges that the State Board's determination was not supported by substantial evidence contained in a written record.  If this allegation is proven, then federal law has been violated.  See 47 U.S.C. § 332 (c)(7)(B)(iii).  Nextel has an express right to have this claim decided by a federal court, 47 U.S.C. § 332 (c)(7)(B)(v),[2] as well as a

---

[1] In any event, the 5-to-4 decision in Pennhurst has been criticized and distinguished so often that it is not clear it is still good law.

[2] This defeats any argument which might be based on Seminole Tribe of Fla v. Florida, 517 U.S. 44 (1996).  In that case, the Supreme Court found that 'intricate [statutory] procedures" defined and limited the federal relief available

clear right to a federal remedy.  See, e.g., Brehmer v. Wellfleet, 238 F.3d 117 (1st Cir. 2001).  In the absence of a showing that the federal component of Nextel's claim is "wholly insubstantial or frivolous," federal question jurisdiction has properly been invoked.  Verizon, 535 U.S. at 643 (citations omitted).  It does not matter whether or not Nextel will prevail on the merits.  Id. at 646.  Similarly, it does not matter whether or not the determination of the merits includes a question of state law.  See Michigan Bell Tel. Co. v. MCI Metro Access Transmission Services, Inc., 323 F.3d 348 (6th Cir. 2003) (federal courts have jurisdiction to review state agency interpretations of state contract law when such contracts are within scope of review contemplated by 47 U.S.C. § 252 (e)(6)) (distinguishing Pennhurst).

In short, there is no Eleventh Amendment bar to this Court's exercise of jurisdiction under 47 U.S.C. § 332 (c)(7)(B)(v) to review a decision of the State Building Code Appeals Board involving the construction and placement of a wireless telecommunications facility.

## II.    Certification Would Be Inappropriate

The State Board's next argument is that  the administrative interpretation from which Nextel has been trying to obtain relief since the Building Commissioner first issued it in or about March 2003,[3] should be certified to the Massachusetts Supreme Judicial Court under Pyle v. South Hadley School Comm., 55 F.3d 20 (1st Cir. 1995).  Pyle, however, involved a question of state statutory interpretation which had to be resolved in order to determine whether the statute itself violated the free speech clause of the First Amendment to the federal constitution.  The First Circuit thus held that, despite its "reluctance to burden the [Supreme Judicial] Court with certification and the litigants with the attendant delay . . . the statutory question [was] of

---

to the plaintiffs.  By contrast, the Telecommunications Act contains a broad grant to the district courts of jurisdiction to review all state and local decisions involving the siting of wireless facilities and places no limits on the remedies which a federal court may impose.  See, generally, Abrams v. City of Rancho Palos Verdes, No. 02-55681 (9th Cir., Jan. 15, 2004) (Section 1983 damages are available for violations of rights under 47 U.S.C. § 332 (c)(7)(B)).

[3] See April 18, 2003 Affidavit of Rosanna Ferrante, submitted in Hanson I, at ¶ 10.

sufficient and prospective importance to state policy in the administration of school systems, and affects students and school administrators statewide" so as to warrant an interpretation by the state's highest court. The present case involves no such considerations. The state regulation is not being challenged as invalid; rather, Nextel asserts only that a specific ruling in a specific case is incorrect. Congress, moreover, has expressly authorized federal courts to decide such issues, and has mandated that such decisions occur on an "expedited basis." 47 U.S.C. § 332 (c)(7)(B)(v). No widespread changes to any state policy will result from this Court's hearing and deciding this case.

By contrast, the federal policy in favor of rapid deployment of wireless networks would be hindered by setting into motion yet another adjudicatory process herein. Nextel entered into the settlement with the Town nearly three years ago. At that time, the Town admitted to a violation of federal law. To be sure, some of the subsequent delay can be attributed to Nextel's decision, based on economic necessity, not to build the facility immediately. But it is equally true that for the past year, Nextel has been diligently attempting to build the facility as agreed (and as ordered by this Court), yet has been unable to do so. There is no important state policy which would warrant additional delays at this juncture.

## III.    Defendants' State Law Arguments Are Incorrect

### A.    The Town's Position

The Town argues that the regulations are unambiguous and that it would be "absurd" to exempt a "tower under 780 C.M.R 3108 . . . from the safety restrictions for roof-mounted antennas imposed by 780 C.M.R. 3109.1." Town's Memorandum at 5-7. In fact, however, Nextel's proposed tower is required to be (and has been) engineered to meet the criteria of Sections 3108.1 and 3108.4 (governing wind loads, ice loads, foundations and anchorage);

Section 3108.3 (governing construction materials); and Section 3108.5 (governing electrical grounding). The proposed tower also would be constructed "in accordance with . . . plans prepared by" Nextel's engineers and in accordance with "detailed drawings and calculations, stamped by a structural engineer licensed in . . . Massachusetts showing . . . structural integrity . . . with particular regard to . . . safety . . . [so that] the facility will not fall onto abutting properties [and] structural examination of the existing building[,] and foundation design of the proposed tower." Consent Judgment in Hanson I at ¶ 3.

These extensive safety-oriented requirements make any additional safety concerns, including setback concerns, unnecessary. Setbacks are properly a concern only under Section 3109.1, which governs "do-it-yourself" installations; under that Section, a homeowner can install any "antennal structure" she wants on her roof without a permit, as long as it is no more than twelve feet tall and as long as it is setback from her neighbor's property as specified.

The Town argues that it would be "illogical" to exempt taller "antennal structures" from this requirement. In fact, however, the logic of the exemption is clear: "antennal structures" greater than twelve feet in height require a building permit, which gives the Building Inspector an opportunity to insure that the installation is "accompanied by detailed drawings of the structure and methods of anchorage . . . properly flashed . . . [and in compliance with] 780 C.M.R. 3108.3 . . . ." See 780 C.M.R. § 3109.2. Thus, unlike a do-it-yourself installation, the taller "antennal structures" governed by Section 3109.2 -- like "towers" governed by Section 3108 -- are subjected to a permitting process with specific engineering and safety requirements that make an arbitrary setback requirement superfluous and unnecessary.

Nextel's reading of the regulations is thus entirely consistent with their plain language, and with the structure of the regulations, which separates different size and types of structures

into different categories and imposes different safety requirements for each.  <u>See</u>, <u>also</u>, Section 3109.3 (defining and establishing separate permitting and construction requirements for "dish antennas").

**B.    The State Board's Position**

The State Board argues that it was correct in its interpretation of the Building Code, although its reasoning is somewhat different from the Town's reasoning.  The Board argues that under Section 3109.2, a structure can be both an "antennal structure" and a "tower."   <u>See</u> Board's Memorandum at 7.  This, however, is not what the Code says and the Court should not strain to reach an unusual interpretation of language when a more obvious meaning presents itself so readily.  Plainly, the drafters knew the difference between "towers," "antennal structures," and "dish antennas."  They could have made roof -mounted "towers" subject to Sect ion 3109.  They also could have made "antennal structures" greater than twelve feet in height subject to Section 3109.1.  They did not do so.

The State Board also places great weight on the BOCA Code Commentary.  <u>See</u> State Board's Memorandum at 6.  Even if this Court were inclined to consider this  "Commentary" as an aid to interpretation, the Commentary itself is expressly limited to "antennas," a term it uses seven times and does not mention "towers."  It thus does not apply here.  The mere fact that the Commentary uses an example of a twenty-foot high "antenna" cannot mean that everything in Section 3109.1 was intended to apply to "towers" within the scope of Section 3108, [4] or even to "antennal structures" greater than twelve feet in height within the sco pe of, and subject to the permitting and construction requirements of, Section 3109.2.  The Commentary does not address these issues at all.

---

[4]   One can only speculate why the Commentary uses an example with a height of 20' feet.

In short, Section 3109 does not apply <u>at</u> <u>all</u> to towers. Such structures are governed by Section 3108, which does <u>not</u> contain the setback restrictions relied upon by the State Board, the Town and the abutting landowner. Even if Section 3109 does apply to towers, it would not impose a setback requirement, since that requirement is contained only in subsection 3109.1 and is thus limited to the "do-it-yourself" antenna less than twelve feet in height, which are installed without a building permit and which are not subject to engineering review.

## IV.    <u>Enforcement of The Building Code Was Preempted By Virtue Of The Consent Decree</u>

Nextel and the Town agreed to the entry of a judgment by this Court, which expressly incorporated a description of the proposed Nextel facility, identified its location *vis-a-vis* the property lines, set forth various engineering and construction criteria and specified all other agreed-upon conditions.

The Building Inspector had no power to overrule any provision of this judgment, whether by reference to a Building Code provision or otherwise. The state and local laws which might ordinarily control are preempted in this setting. <u>Brehmer</u>, <u>supra</u>. The Town and the proposed intervenors attempt to distinguish <u>Brehmer</u> by arguing, in essence, that their efforts to block Nextel's federal remedy involve a different provision of state or local law than the one at issue at the time of the court-approved settlement: the Building Code rather than the Town's Zoning By-law. Under the circumstances of this case, this is a distinction without a difference. The Town could have, and should have, addressed any setback and other construction issues at the time of the settlement. Indeed, the agreed-upon language in the consent judgment requiring engineering review and approval of the structural integrity of the tower, the support guys, the building's condition and the foundation design all seems strikingly similar to the specific Building Code provisions now being raised by the Town (Sections 3108 and 3109). An inference is warranted

that Town officials did, in fact, consider the Building Code at the time of the settlement.  In any event, they plainly could have.

The proposed intervenors also could have addressed their setback concerns had they made a timely motion to intervene in Hanson I instead of waiting until June 2003, more than two years after the settlement was reached.[5]  Instead, these parties waited until Nextel was ready to build and then brought forward new issues in an effort to impede and undermine the federal remedy previously agreed upon and granted to Nextel.  The pre-emption doctrine, as well as principles of res judicata, bar this belated challenge.

## CONCLUSION

For all of the foregoing reasons, this Court should declare that the decision of the State Board was not supported by substantial evidence in a written record and therefore must be reversed; declare that any state or local government action seeking to limit or to prohibit Nextel from the placement or construction of the proposed tower as contemplated by the Consent Decree is unlawful; and, issue an injunction ordering the Town of Hanson, the State Building Code Appeals Board, the proposed intervenors, and all other parties with notice hereof immediately to take all further actions necessary to implement the Consent Decree, including the issuance of a building permit, and to refrain from taking any further action inconsistent with said Decree.

---

[5] The proposed intervenors knew, or should have known, of the Nextel lawsuit and the settlement the Town had reached with Nextel.  See, e.g., correspondence submitted by the proposed intervenors' previous counsel in Case No. 00-CV-11417 as exhibits to the Affidavit of Kenneth Marston in support of Motion for Leave to Intervene, reflecting, inter alia, widespread "local news reports" of Hanson  I at the time it was pending.

Respectfully submitted,

**NEXTEL COMMUNICATIONS OF
THE MID-ATLANTIC, INC. d/b/a
NEXTEL COMMUNICATIONS**

By their attorneys,

**DEVINE, MILLIMET & BRANCH,
PROFESSIONAL ASSOCIATION**


Dated:  January 30, 2004          By:     _____/s/_____
                                          Steven E. Grill, Esquire (*admitted pro hac vice*)
                                          111 Amherst Street, P.O. Box 719
                                          Manchester, NH 03105-0719
                                          (603) 669-1000

## CERTIFICATE OF SERVICE

I hereby certify on this 30th day of January 2004, a copy of the foregoing Reply Memorandum of Law was served upon Katharine Doyle, Esquire, counsel for the Town; Assistant Attorney General John Hitt, counsel for the State Board; Anthony Feeherry, Esquire, counsel for Marston Realty Trust and Hirschfeld Communications, LLC; and, Paul J. Moriarty, Esquire, counsel to Mr. and Mrs. DeFrancesco.


_____/s/_____
Steven E. Grill, Esquire


J:\wdox\docs\clients\10339\55130\M0547113.DOC